**BETHLEHEM STRUCTURAL PRODUCTS, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (VERNON), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 2001.

Decided Oct. 18, 2001.

Publication Ordered Dec. 19, 2001.

---

Barbara L. Hollenbach, Allentown, for petitioner.

Michael W. McGurrin, Philadelphia, for respondent.

Before COLINS, Judge, LEADBETTER, Judge, MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Bethlehem Structural Products (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed a decision of a workers' compensation judge (WCJ) granting the petition to review compensation benefits of Clarence Vernon (Claimant). Also before the Court is Claimant's motion to quash Employer's petition for review. The motion to quash is denied and the order of the Board is affirmed.

Claimant sustained a work-related injury to his right shoulder on June 13, 1997. Employer issued a notice of compensation payable, agreeing to pay Claimant workers' compensation benefits in the amount of $233.07 per week based upon an average weekly wage of $258.97. On August 3, 1998, Claimant filed a petition to review compensation benefits, alleging that his average weekly wage was incorrectly calculated. He alleged that pursuant to Section 309(d.2) of the Workers' Compensation Act (Act) [1], his average weekly wage should have been calculated at $648.04. Employer denied the material allegations of the petition, and the matter was argued before the WCJ on a stipulation of facts entered into by the parties.

The stipulation set forth the following relevant facts. Claimant was employed by Employer from March 15, 1973 until March 28, 1998. From September 23, 1995 until March 22, 1997, Claimant did not work because he was totally disabled as a result of a non-work-related condition. He remained employed with Employer during this time, however, and received

---

**1.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 582(d.2).

weekly sickness and accident benefits. Claimant returned to work on March 23, 1997 but then became disabled as a result of the work-related shoulder injury occurring on June 13, 1997.

For each of the last four consecutive periods of thirteen calendar weeks preceding the June 13, 1997 injury, Claimant received the following wages:

| | From | To | Wages |
|---|---|---|---|
| 1st Period | 3–9–97 | 6–7–97 | $7901.89 |
| 2nd Period | 12–8–96 | 3–8–97 | 0 |
| 3rd Period | 9–8–96 | 12–7–96 | 0 |
| 4th Period | 6–9–96 | 9–7–96 | 0 |

Annual Bonus, Incentive, and Vacation: $2,931.08

During the first Period (March 9 to June 7, 1997), Claimant worked only eleven of the thirteen weeks. He works as a laborer with a wage rate of $12.85 per hour. He is expected to work forty hours per week, but his wages are not fixed by the week, month, or year. A portion of Claimant's annual bonus, incentive, and vacation pay of $2,931.08 during the last four consecutive periods of thirteen calendar weeks preceding the work injury was vacation pay used to calculate his average weekly wage under Section 309(d) of the Act, 77 P.S. § 582(d), and was paid to Claimant as follows: (a) $720.77 paid during the week of June 9 to June 15, 1996; (b) $744.77 paid during the week of September 15 to September 21, 1996; and (c) $744.77 paid during the week of September 22 to September 28, 1996.

Based on these stipulated facts, the WCJ granted Claimant's review petition, concluding that his average weekly wage should be calculated under Section 309(d.2) rather than under Section 309(d). Section 309 provides generally for the method of ascertaining the correct average weekly wage of a claimant. Subsections (a), (b), and (c) provide calculations for fixing the average weekly wage when the claimant's wages are fixed, respectively, by the week, month, and year. Section 309(d) provides:

> (d) If at the time of the injury the wages are fixed by any manner not enumerated in clause (a), (b) or (c), the average weekly wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer in each of the highest three of the last four consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury and by averaging the total amounts earned during these three periods.

Section 309(d.2) provides:

> (d.2) If the employe has worked less than a complete period of thirteen calendar weeks and does not have fixed weekly wages, the average weekly wage shall be the hourly wage rate multiplied by the number of hours the employe was expected to work per week under the terms of employment.

■ The WCJ concluded that because Claimant worked less than thirteen weeks prior to his injury in the immediately preceding fifty-two week period, Section 309(d.2) applied, resulting in an average weekly wage of $570.37 with a corresponding weekly benefit rate of $380.24. The Board affirmed, and this petition for review followed.[2]

*Motion to Quash*

■ Following the date Employer filed its petition for review, Claimant filed a motion to quash. Claimant's motion alleged that after Employer filed its appeal

---

2. This Court's scope of review is limited to determining whether the WCJ's necessary findings of fact are supported by substantial evidence or whether an error of law or a constitutional violation occurred. *ABF Freight Systems, Inc. v. Workers' Compensation Appeal Board (Iten)*, 744 A.2d 348 (Pa. Cmwlth.2000).

to the Board from the WCJ's decision, but before the Board had ruled on the appeal, Claimant and Employer entered into a Compromise and Release Agreement (C & R) regarding issues in this case. The C & R contained a provision that Employer will not withdraw its appeal to the Board on the issue of the correct calculation of Claimant's average weekly wage "so that its right to supersedeas fund reimbursement for previously paid benefits will be unimpaired." C & R, Paragraph 4. Claimant contends that the C & R, which was approved by the WCJ, resolved all issues between the parties, rendering Employer's present petition for review moot. Claimant cites *Stroehmann Bakeries v. Workers' Compensation Appeal Board (Plouse)*, 768 A.2d 1193 (Pa.Cmwlth.2001), as controlling. In *Stroehmann*, we held that a compromise and release agreement signed by the parties rendered moot the employer's petition for this Court to review the denial of its termination petition because the agreement settled the exact issue raised in the termination petition.

In the present case, however, the C & R did not settle the issue of whether Claimant's average weekly wage was correctly calculated. In fact, paragraph 4 of the C & R indicated that this issue was still in dispute. The issues that were covered by the C & R are set forth in paragraph 15 of that document. They generally involve Employer's obligation to pay Claimant benefits in light of Claimant's alleged ability to return to "some type of work" when no job vacancy within Claimant's restrictions exists with Employer. The C & R fixes a lump sum to resolve any *future* "indemnity" and medical bills arising from the work injury. C & R, Paragraph 8. Thus, the C & R resolves Employer's obli-

gations from the date of the C & R. It does not resolve the issue of the amount of weekly benefits due and owing under the notice of compensation payable to the date of the C & R. Accordingly, Claimant's motion to quash is denied.

### Petition for Review

In its petition for review, Employer argues that the WCJ erred by computing Claimant's average weekly wage under Section 309(d.2) rather than under Section 309(d) of the Act. Employer contends, without citation to relevant authority, that Section 309 must be read in a hierarchical manner. That is, if Section 309(a) applies, there is no need to go to subsection (b), etc. Thus, Employer argues, since subsections (a), (b), and (c) do not apply, the WCJ must examine whether subsection (d) fits the factual situation in the case and, if so, then there is no need to go further (*i.e.,* to subsection (d.2)). Employer argues that because Claimant was in its employ for fifty-two weeks prior to the work injury, even though he was not actually working and earning wages during the bulk of that time, Section 309(d) clearly applies. Thus, according to Employer, under that section Claimant's average weekly wage must be calculated by dividing by thirteen the average of the total amounts of the highest three of the last four consecutive periods of thirteen calendar weeks in Employer's employ. The average weekly wage calculated under Section 309(d) amounts to $258.97, as was originally set forth in the notice of compensation payable.[3] Employer contends that because Section 309 was amended in 1996 to dispense with the provision that wages be calculated in a manner most beneficial to a

---

**3.** Claimant earned wages, in the amount of $7901.89, in only one of the four thirteen week periods preceding the injury. Employer therefore divided $7901.89 by thirteen to arrive at $607.82, which was further divided by three to arrive at $202.61. Adding the weekly average of the $2931.08 vacation pay ($56.37) to $202.61 results in a total of $258.97.

claimant, a hierarchical approach to interpreting Section 309 must govern.

Employer also argues that the issue is controlled by *Norton v. Workers' Compensation Appeal Board (Norton)*, 764 A.2d 704 (Pa.Cmwlth.2000). In *Norton*, the issue was whether a claimant's average weekly wage should be calculated under Section 309(d) or Section 309(d.1) of the Act. The claimant in that case earned the following wages during the last four thirteen-week periods preceding his injury: $3255; $467; $7578; and $6815. Claimant alleged that there were periods when he did not work and was not paid because his employer (a family-owned construction company) would shut down the business when the owner went on vacation. The claimant argued that his average weekly wage should be calculated under Section 309(d.1), which generally provides that if the claimant "has not been employed by the employer" for at least three consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury, then the average weekly wage would be calculated under that section. We concluded, however, that because the claimant was clearly "employed" by his employer during the last four thirteen-week periods preceding the injury, Section 309(d.1) did not apply and his average weekly wage was correctly calculated under Section 309(d).

■ Employer's arguments are without merit. First, *Norton* is clearly inapposite to the present case. We are not concerned here with whether Claimant was employed during the last three or more consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury. He was clearly "employed" by Employer throughout the year preceding the injury. The issue before us, rather, is whether he *worked* for less than a complete period of thirteen calendar weeks preceding the injury without receiving a fixed weekly wage. Because Claimant did not work for a complete period of thirteen calendar weeks in the fifty-two weeks preceding the injury, Section 309(d.2), by its very clear language, sets forth the manner of calculating Claimant's average weekly wage.

Second, there is no basis to conclude that Section 309 should be read, not in its entirety, but in a sequential manner until the reviewing authority arrives at what appears to be an applicable provision. Indeed, our Supreme Court has determined that the intent of Section 309, both before and after the 1996 amendments, is to establish a baseline figure from which benefits are calculated that *reasonably reflects* the reality of the claimant's pre-injury earning experience. *Triangle Building Center v. Workers' Compensation Appeal Board (Linch)*, 560 Pa. 540, 746 A.2d 1108 (2000). *See also Norton.* Employer's application of Section 309(d) in issuing the notice of compensation payable resulted in an artificially low average weekly wage of $258.97, which was approximately *one-third* of Claimant's actual pre-injury weekly earning experience.

Here, Claimant, although employed for a longer period, *worked* for less than a complete period of thirteen calendar weeks in the fifty-two weeks preceding the injury. Thus, reading Section 309 as a whole, Claimant's average weekly wage must be calculated under Section 309(d.2). This results in an average weekly wage that more reasonably reflects the reality of his pre-injury earning experience.[4] We would further note, moreover, that the Act must

---

4. Claimant contends that if his actual earnings were divided by the number of weeks worked, his average weekly wage is $774.72.

The WCJ calculated Claimant's average weekly wage under Section 309(d.2) as $570.37.

be interpreted in borderline situations in favor of the injured employee to effect the Act's remedial and humanitarian purposes. *Harper & Collins v. Workmen's Compensation Appeal Board (Brown)*, 543 Pa. 484, 672 A.2d 1319 (1996).

The order of the Board is affirmed.

## ORDER

AND NOW, this 18th day of October, 2001, the motion of Clarence Vernon to quash the petition for review of Bethlehem Structural Products is denied, and the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.