**Kathleen GARTNER, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (KMART CORPORATION), Respondent.**

**Kmart Corporation, Petitioner,**

v.

**Workers' Compensation Appeal Board (Gartner), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 15, 2002.

Decided April 25, 2002.

Peter J. Classetti, Newtown, for petitioner.

Kevin L. Connors, Exton, for respondent.

BEFORE: COLINS, President Judge, COHN, Judge, and MIRARCHI, Senior Judge.

OPINION BY Judge COHN.

Before the court are cross petitions filed by Kathleen Gartner (Claimant) and Kmart Corporation (Employer) from an order of the Workers' Compensation Appeal Board that reversed in part, modified in part, and affirmed in part an order of a Workers' Compensation Judge (WCJ). We affirm in part, reverse and vacate in part, and remand for recalculation.

On February 21, 1997, Claimant filed two claim petitions. In the first she alleged that she sustained a left arm injury in the nature of "cumulative trauma/repetitive use syndrome" while driving a forklift. Employer did not admit or deny liability but did place her on light-duty work. She seeks only partial disability benefits due to loss of overtime for that injury. In her second claim petition she alleged that on September 13, 1996, while pulling down merchandise, she sustained an injury to her neck, left shoulder, and left arm due to a herniated disk at C6–7. The parties later stipulated that Claimant suffered no wage loss from this injury. In both petitions she sought medical expenses, attorney fees, interest and penalties.

On March 4, 1997, Claimant filed two penalty petitions alleging that Employer violated Section 406.1 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*,[1] by failing to pay for her lost overtime.

In addition, it was brought out at the hearing that Employer did accept liability for a November 1996 work injury described as a "trapezius strain" by issuing a notice of compensation payable, although claimant's counsel reserved the right to review that notice. This action by counsel was treated as a request to review notice of compensation payable. Claimant is, at present, on total disability pursuant to this notice of compensation payable.

At the hearing, the only medical evidence Claimant presented was a series of return to work slips completed by Employer's doctor. While these documents contained diagnoses, they did not, in any way, address causation, *i.e.*, whether Claimant's injuries were work related.

The WCJ held that Claimant met her burden to prove work-related injuries for both claim petitions and granted them both. Regarding the first petition, he awarded Claimant $417.52 in overtime wages for the period from February 26, 1996 through April 30, 1996. In addition, he awarded her $221.73 in reimbursement for sick, vacation, and personal leave she had used. He also held that Employer had violated the Act with regard to both

---

1. 77 P.S. § 717.1. This Section was added by Section 3 of the Act of February 8, 1972, P.L.

claim petitions by failing to admit or deny liability.

The WCJ also granted the request to review notice of compensation payable and concluded that Claimant's average weekly wage (AWW) was computed in error. Therefore, he ordered Employer to pay an additional $216.55 per week for all weeks which she had received total disability for her November 7 injury. He also ordered benefit rates of $480.05 from the date of his decision and *in futuro* for her continuing total disability arising from the November 7 occurrence and awarded "quantum meruit" of $2,500 to Claimant's counsel and litigation costs. Both parties cross appealed to the Board.

On appeal, the Board concluded that Claimant had not met her burden to prove a work-related causal connection for her February 26 and September 13 injuries and that causation was not so obvious as to obviate the need for medical testimony. It, thus, reversed the grant of the two claim petitions. And, because it reversed these two petitions, it concluded that the grant of the penalty petitions had to be reversed as well since the penalty awards were based on the benefits awarded. It additionally concluded that because Claimant failed to meet her burden and because Employer prevailed on the four petitions, its contest was reasonable and, therefore, the award of counsel fees was also reversed. Regarding the AWW issue, the Board (in a 7/5 split opinion) determined that the WCJ had employed the correct section of the Act in calculating the AWW, but disagreed as to the method used to figure in the overtime when computing the AWW and, thus, employed a different method, thereby modifying the amount of the AWW. Cross appeals to this court followed.

■ Our scope of review where, as here, both parties have presented evidence is limited to whether the findings of fact are supported by substantial evidence and whether there has been any constitutional violation or legal error. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *York Terrace/Beverly Enterprises v. Workmen's Compensation Appeal Board (Lucas)*, 140 Pa. Cmwlth.75, 591 A.2d 762, 764 n.5 (1991). It is within the sole province of the WCJ to make credibility determinations. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703 (Pa.Cmwlth.1995).

■ We first consider Claimant's issues. Initially, she asserts that the Board erred in reversing the grant of the two claim petitions. To sustain her burden Claimant needed to prove that her injury arose in the course of employment and was related thereto. *Shremshock v. Workmen's Compensation Appeal Board (Borough of Plum)*, 20 Pa.Cmwlth.35, 340 A.2d 637 (1975). She relies on her Exhibit C 1 to establish causation. This exhibit is nothing more than four return to work slips completed by Employer's doctor and containing diagnoses, but no statements regarding causation. Claimant admits that she has presented no expert medical testimony on causation, but asserts that under *Morgan v. Workmen's Compensation Appeal Board (Giant Markets, Inc.)*, 483 Pa. 421, 397 A.2d 415 (1979), her injuries were obvious, eliminating the need for expert medical testimony on causation. In *Morgan* the claimant, a truck driver, was engaged in unloading a truck when he experienced sudden back pain. Specifically, he had his feet braced against the truck's interior and was pushing objects when his back gave way. The court held that a

causal connection is obvious where an individual is doing an act that requires force or strain and pain is immediately experienced at the point of force or strain. In the case at bar Claimant testified, regarding the February incident, that she was driving a forklift and getting pain near her left elbow and shoulder. There is nothing to indicate that she was involved in an activity involving any sudden force or strain. Regarding the September event, she stated that she was using her right hand to pull down merchandise with a hook, but she turned her neck and felt pain in her LEFT shoulder. Again, we do not think that this fact pattern fits within the *Morgan* case. We, thus, conclude that the Board properly reversed the grant of the two claim petitions.

■ Examining next the penalty petitions,[2] we agree with Claimant that *Winkelmann v. Workmen's Compensation Appeal Board (Estate of O'Neill)*, 166 Pa. Cmwlth.154, 646 A.2d 58 (1994), *petition for allowance of appeal denied*, 540 Pa. 609, 655 A.2d 996 (1995), controls here. In that case, as here, a WCJ awarded benefits and on appeal that award was reversed. In both *Winkelmann* and the case *sub judice*, the employers were guilty of violations of the Act. In *Winkelmann*, the employer had not obtained a supersedeas but, nonetheless, refused to pay the claimant benefits as ordered. Here, Employer refused to admit or deny liability regarding the first two claim petitions filed by Claimant. Such action is a clear violation of Section 406.1 of the Act. Because here, as in *Winkelmann*, there was a grant of benefits made by the WCJ (albeit one that was reversed by the Board) there is a

basis to calculate the Section 435(d) penalty. *Winkelmann; see also Wyche v. Workers' Compensation Appeal Board (Pimco)*, 706 A.2d 1297 (Pa.Cmwlth.1998). We distinguish the result in the *Wyche* case, where the court held no imposition of penalties was allowed, from the case at bar because, although in *Wyche*, the type of violation was the same (failure to issue a denial of notice of compensation payable, as well as a failure to prepare and file a certain report with the Department of Labor and Industry) in that case, the WCJ did not grant the claim petition, and so there was no initial award from which penalties could be calculated. Here, however, because the WCJ initially granted the claim petitions, there was a basis upon which to premise the calculations. *Wyche.* Accordingly, we affirm the grant of the penalty petitions, but note that penalties should be calculated based only upon the February and September claim petitions.

■ Turning now to Employer's cross appeal, we must initially determine the appropriate formula for calculating Claimant's AWW. The WCJ and Board relied on Section 309(d.2) of the Act, 77 P.S. § 582(d.2), as does Claimant. Employer asserts that the correct formula to employ is that set forth in Section 309(d), 77 P.S. § 582(d).[3] Section 309 pertinently states:

**Wages; computation for purpose of determining compensation**

Wherever in this article the term "wages" is used, it shall be construed to mean the average weekly wages of the employe, ascertained as follows:

(a) If at the time of the injury the wages are fixed by the week, the amount

---

2. Section 435(d) of the Act allows penalties to be imposed against employers for violations of the Act.

3. We note that because the determination of AWW is a question of law, our review is plenary. *Port Authority of Allegheny County v. Workers' Compensation Appeal Board (Cooley)*, 773 A.2d 224, 226 n. 1 (Pa.Cmwlth.2001).

so fixed shall be the average weekly wage;

(b) If at the time of the injury the wages are fixed by the month, the average weekly wage shall be the monthly wage so fixed multiplied by twelve and divided by fifty-two;

(c) If at the time of the injury the wages are fixed by the year, the average weekly wage shall be the yearly wage so fixed divided by fifty-two;

(d) If at the time of the injury the wages are fixed by any manner not enumerated in clause (a), (b) or (c), the average weekly wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer in each of the highest three of the last four consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury and by averaging the total amounts earned during these three periods.

. . . .

(d.2) If the employe has worked less than a complete period of thirteen calendar weeks and does not have fixed weekly wages, the average weekly wage shall be the hourly wage rate multiplied by the number of hours the employe was expected to work per week under the terms of employment.

Employer maintains that Section 309(d) is the proper one here because Claimant was "employed" for fifty-two weeks prior to the injury. It notes that the term "employ" has not been limited merely to the actual number of days a claimant worked for wages, but has been defined in *Norton v. Workers' Compensation Appeal Board (Norton)*, 764 A.2d 704 (Pa.Cmwlth.2000), to include the period of time an employment relationship is maintained between the employer and the employee. In this case, Claimant began her employment with Employer in January of 1995. Other than

the period from early May 1996 through mid-August 1996, when she took personal leave, she worked continuously for employer until February 17, 1997. Further, even during her leave of absence, the record reveals that she was paid disability through an employer-funded program. (*See* Claimant's Exhibit 2.) Employer points out that we have held that even when the days worked are sporadic, a claimant is employed when her employment itself is continuous. *See e.g., Port Authority of Allegheny County v. Workers' Compensation Appeal Board (Cooley)*, 773 A.2d 224, 228 (Pa.Cmwlth.2001) (citing *Frank M. Sheesley Co. v. Workmen's Compensation Appeal Board (Brant)*, 106 Pa.Cmwlth.227, 526 A.2d 450 (1987)).

Claimant counters that the WCJ and Board were correct in utilizing Section 309(d.2) of the Act. She relies on *Bethlehem Structural Products v. Workers' Compensation Appeal Board (Vernon)*, 789 A.2d 767 (Pa.Cmwlth.2001). In *Bethlehem Structural Products*, the claimant was employed from March 15, 1973 until March 28, 1998, but did not work for the period from September 23, 1995 to March 22, 1997, because of a non-work-related medical condition. During that time, however, he did receive sickness and accident benefits. After he returned to work on March 23, 1997, he suffered a work-related injury on June 13, 1997. For the four consecutive thirteen-week calendar periods preceding the June 13, 1997 injury, Claimant received wages only for the first thirteen-week period (as well as a sum for an annual bonus, incentive and vacation) and, of critical significance, **he worked only eleven weeks of that thirteen-week period.** The WCJ utilized Section 309(d.2) in computing the AWW, reasoning that claimant had worked fewer than thirteen weeks prior to his injury in the immediately preceding fifty-two week period. The Board affirmed. On appeal here, the em-

ployer asserted that Section 309(d) should have been employed instead to calculate the AWW. We disagreed, stating that "[b]ecause Claimant did not work for a complete period of thirteen calendar weeks in the fifty-two weeks preceding the injury, Section 309(d.2), by its very clear language, sets forth the manner of calculating Claimant's average weekly wage." *Id.* at 771.

In the case *sub judice,* we agree with the Board's dissenting opinion that Claimant *did* have a complete thirteen-week period in which she worked, specifically the period from November 12, 1995 through April 12, 1996. This fact distinguishes her case from *Bethlehem Structural Products* and takes her out of the specific statutory limitation appearing in Section 309(d.2). Thus, we hold that the Board erred in determining that Section 309(d.2) applied and reverse on this issue.[4]

Based upon the foregoing discussion, the order is affirmed as to the denial of the claim petitions, reversed as to the denial of the penalty petitions, reversed as to the formula employed to calculate the AWW and that calculation is vacated, and the matter is remanded for calculation of the penalty and recalculation of the AWW, employing the correct statutory formula.

### ORDER

**NOW,** April 25, 2002, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed in part, reversed and vacated in part and the matter is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.

---

4. Because of our disposition of this issue, we need not reach the question of the proper calculation of overtime benefits, which is only required if Section 309(d.2) is utilized.