Jeffrey REIFSNYDER, Petitioner,

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (DANA CORPO-
RATION), Respondent.

Dennis Remp, Petitioner,

v.

Workers' Compensation Appeal Board
(Dana Corporation), Respondent.

Richard Hoffa, Petitioner,

v.

Workers' Compensation Appeal Board
(Dana Corporation), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 4, 2002.
Decided April 23, 2003.
Reargument En Banc Denied
June 30, 2003.

Thomas J. O'Brien, Philadelphia, for petitioners.

David S. Reno, Ft. Washington, for respondent.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, and FLAHERTY, Senior Judge.

OPINION BY *Senior Judge* FLAHERTY.

Jeffrey Reifsnyder (Reifsnyder), Dennis Remp (Remp) and Richard Hoffa (Hoffa) (collectively, "Claimants"),[1] who are all employees of Dana Corporation (Employer), petition for review of orders of the Workers' Compensation Appeal Board (Board) which affirmed the decisions of a Workers' Compensation Judge (WCJ) denying their Petitions to Review Compensation Benefits and concluding that their average weekly wages were correctly calculated pursuant to Section 309(d) of the Workers' Compensation Act (Act).[2] We reverse the decision of the Board and remand for a recalculation of benefits pursuant to Section 309(d.2) of the Act.

Pursuant to Notices of Compensation Payable (NCP), Claimants began receiving workers' compensation benefits for injuries that they sustained while working for Employer. Employer calculated the average weekly wage for each Claimant as follows: Reifsnyder, $688.41; Remp, $412.13; Hoffa, $376.31. Thereafter, Claimants filed Petitions to Review Compensation Benefits asserting that their average weekly wages were calculated incorrectly.

The parties each submitted a separate but identical Stipulation of Facts (Stipulation) to the WCJ which set forth, in relevant part, that:

6. Each claimant did not have continuous earnings for the 52 weeks preceding the injury for the following reasons:

. . .

Reifsnyder—Claimant was laid off due to lack of work [for various periods from November 3, 1997 to November 8, 1998].

. . .

Remp—Claimant was laid off due to lack of work [for various periods from December 8, 1997 to August 31, 1998].

Hoffa—Richard Hoffa was on layoff/suspension for the period of October 23, 1997 through March 11, 1998 because of the lack of work in the plant. From March 12, 1998 through August 5, 1998 claimant was off due to a restructuring within the facility.

7. Though the claimants did not actually work in the plant and earn a paycheck for the periods noted above in paragraph 6, the claimants maintained an employment relationship with Dana Corporation in accordance with the terms of the collective bargaining agreement. The employer continued to provide the claimants with healthcare benefits and contributions to the retirement account. Under the union contract, "sick benefits" were available during a layoff under the Supplemental Unemployment Benefit plan if the worker was no longer entitled to unemployment compensation due to medical reasons. During the periods of layoff, claimants retained their

---

1. By order of this Court dated May 8, 2002, the cases of the individual Claimants were consolidated because they each involve the same issue and the same employer.

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582(d).

union entitlement to be recalled as soon as work was available, provided they were physically capable. According to the union contract, each claimant maintained their plant seniority during the layoff and such seniority would have continued for a period of not less than three years of continual layoff. After three years of continual layoff, the employee would be contacted to determine if he wished to continue to remain on the seniority roster. The seniority roster would not continue beyond six years of continual layoff.

8. [Employer] considered each claimant to be in their employ for four consecutive periods of 13 calendar weeks in the 52 weeks immediately preceding the injury, and [Employer] therefore calculated the average weekly wage by dividing by 13 the total wages earned in each of the three highest of the last four consecutive periods and averaging the total amounts earned during these three periods.

9. The central issue in this case is how to properly calculate the average weekly wage when the claimant did not have continuous earnings for at least three consecutive periods of 13 calendar weeks in the 52 weeks immediately preceding the injury.

. . .

11. The parties request the Judge to determine the proper formula to calculate the average weekly wage under the circumstances of these cases.

■ On September 12, 2000, the WCJ issued separate decisions and orders wherein he concluded that although Claim-ants did not earn wages for at least three consecutive periods of 13 calendar weeks in the 52 weeks immediately preceding their injuries because they were laid off, they continued to be employed by Employer while they were laid off. Therefore, the WCJ determined that their wages were properly calculated pursuant to Section 309(d) of the Act. Claimants appealed to the Board, which affirmed the decisions of the WCJ.[3] This appeal followed.[4]

■ On appeal, Claimants argue that their employment relationship with Employer was suspended while they were laid off and that therefore their benefits were improperly calculated under Section 309(d) of the Act. In addition, Claimants argue that their benefits should have been calculated pursuant to Section 309(d.2) of the Act because they had not worked a complete calendar quarter in the 52 weeks prior to their injuries.

Section 309 of the Act provides, in relevant part, that:

(d) If at the time of the injury the wages are fixed by any manner not enumerated in clause (a), (b) or (c), the average weekly wage shall be calculated by dividing by thirteen the total wages earned *in the employ of the employer* in each of the highest three of the last four consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury and by averaging the total amounts earned during these three periods.

(d.1) If the employe has not been employed by the employer for at least three consecutive periods of thirteen cal-

---

**3.** One Board Commissioner dissented from these opinions.

**4.** This court's appellate review over an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board pro-cedures were violated, whether constitutional rights were violated or an error of law was committed. *Republic Steel Corporation v. Workmen's Compensation Appeal Board (Petrisek )*, 537 Pa. 32, 640 A.2d 1266 (1994).

endar weeks in the fifty-two weeks immediately preceding the injury, the average weekly wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer for any completed period of thirteen calendar weeks immediately preceding the injury and by averaging the total amounts earned during such periods.

(d.2) *If the employe has worked less than a complete period of thirteen calendar weeks* and does not have fixed weekly wages, the average weekly wage shall be the hourly wage rate multiplied by the number of hours the employe was expected to work per week under the terms of employment.

77 P.S. § 582(d)(d.1) and (d.2) (emphasis added).

Initially, we note that when a claimant's wages are not fixed by the week, month or year, the average weekly wage must be calculated under either Section 309(d), (d.1) or (d.2). Subsection (d) applies to situations where the claimant has been *employed* by the employer for at least three consecutive 13 week periods in the 52 weeks preceding the injury. Subsection (d.1) applies when the claimant has not been *employed* for at least three consecutive 13 weeks periods in the 52 weeks preceding the injury. Finally, subsection (d.2) applies when the employee has not *worked* a complete period of 13 weeks.

*See Colpetzer v. Workers' Compensation Appeal Board (Standard Steel )*, 802 A.2d 1233, 1236 (Pa.Cmwlth.2002).

Based on Paragraph No. 7 of the Stipulation, it is clear that Claimants continued to receive significant benefits from Employer in the 52 weeks preceding their injuries. However, before we make a determination as to whether Claimants were "employed" for purposes of calculating their average weekly wages, we must address the argument of Claimants that they did not work a complete 13 week period in the 52 weeks preceding their injuries and that therefore their average weekly wages should be calculated pursuant to Section 309(d.2).

█ In support of their argument, Claimants cite *Bethlehem Structural Products v. Workers' Compensation Appeal Board (Vernon)*, 789 A.2d 767 (Pa.Cmwlth. 2001), *petition for allowance of appeal denied*, 568 Pa. 706, 796 A.2d 986 (2002).[5] In *Bethlehem Structural Products*, the claimant only worked eleven out of thirteen weeks in the first 13 week period preceding his injury and did not work at all in the other three 13 week periods in the 52 weeks preceding his injury. On appeal, the employer argued that the claimant's wages should have been calculated under Section 309(d.1) because the claimant was employed in the last three or more consecutive periods of 13 weeks in the 52 weeks

**5.** Employer argues that the first time Claimants raised the argument that Section 309(d.2) should be used to calculated their average weekly wages was in their Brief and that, therefore, this argument is waived. However, in the Discussion section of the WCJ's decision, he notes that: "If, on the other hand, as claimants contend, they were not employed by [Employer] during this period, the average weekly wage is to be calculated pursuant to Section 309(d.1) or Section 309(d.2) of the Act." Thus, it is clear that this issue was raised before the WCJ. Furthermore, in paragraph No. 11 of the Stipulation,

the parties "request the [WCJ] to determine the proper formula to calculate the average weekly wage under the circumstances of each of these cases." It is evident that the ultimate issue in this case has always been which subsection of Section 309 should be utilized to correctly calculate the average weekly wages of Claimants. Therefore, Claimants have not waived this issue. Accordingly, we will proceed to determine the proper formula that should be used to calculate the average weekly wages of Claimants as requested to do by both Employer and Claimants in their Stipulation.

preceding his injury. In rejecting the employer's argument, we stated that "[w]e are not concerned here with whether Claimant was employed during the last three or more consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury. He was clearly "employed" by Employer throughout the year preceding the injury. The issue before us, rather, is whether he *worked* for less than a complete period of thirteen calendar weeks preceding the injury without receiving a fixed wage. Because Claimant did not work for a complete period of thirteen calendar weeks in the fifty-two weeks preceding the injury, Section 309(d.2), by its very clear language, sets forth the manner of calculating Claimant's average weekly wage." *Id.* at 771 (emphasis in original). We further noted that:

> ... reading Section 309 as a whole, Claimant's average weekly wage must be calculated under Section 309(d.2). This results in an average weekly wage that more reasonably reflects the reality of his pre-injury earning experience. We would further note, moreover, that the Act must be interpreted in borderline situations in favor of the injured employee to effect the Act's remedial purposes.

*Id.* at 771–772 (footnote omitted).

To determine whether Section 309(d.2) is the proper subsection to apply in this case, we must examine each of the Claimants' work histories individually. First, with regard to Reifsnyder, the relevant 13 weeks periods, as set forth in his NCP, are as follows:

1st Period 11/23/97—02/23/98

2nd Period 02/23/98—05/23/98

3rd Period 05/23/98—08/23/98

4th Period 08/23/98—11/23/98

According to the Stipulation, Reifsnyder was laid off and not working numerous times in the 52 weeks preceding his November 23, 1998 injury, including, but not limited to: from 11/03/97 to 01/25/98, which is during the 1st Period; from 02/25/98 to 03/02/98, which is during the 2nd Period; from 07/20/98 to 08/09/98, which is during the 3rd Period; from 08/17/98 to 09/20/98, which is during the 4th Period. Therefore, Reifsnyder did not actually work a complete 13 week period because he was laid off at various times in each of the four relevant periods. Thus, because Reifsnyder "worked less than a complete period of thirteen calendar weeks" his benefits should be calculated pursuant to Section 309(d.2) of the Act. *Bethlehem Structural Products.*

Second, with regard to Remp, the relevant 13 weeks periods, as set forth in his NCP, are as follows:

1st Period 10/14/97—01/14/98

2nd Period 01/14/98—04/14/98

3rd Period 04/14/98—07/14/98

4th Period 07/14/98—10/14/98

According to the Stipulation, in the 52 weeks preceding his October 14, 1998 injury, Remp was laid off and not working from: 12/08/97 to 12/09/97, which is in the 1st Period; from 12/15/97 to 03/22/98, which is in the 1st Period and 2nd Period; from 03/27/98 and 03/29/98 to 08/31/98, which is during the 2nd, 3rd and 4th Periods. Therefore, Remp did not actually work a complete 13 week period because he was laid off at various times in each of the four relevant periods. Thus, because Remp "worked less than a complete period of thirteen calendar weeks" his benefits should be calculated pursuant to Section 309(d.2) of the Act. *Bethlehem Structural Products.*

Third, and finally, with regard to Hoffa, the relevant 13 week periods, as set forth in his NCP, are as follows:

1st Period 10/23/97—01/23/98

2nd Period 01/23/98—04/23/98

3rd Period 04/23/98—07/23/98

4th Period 07/23/98—10/23/98

According to the Stipulation, in the 52 weeks preceding his October 23, 1998 injury, Hoffa was laid off and not working from: 10/23/97 to 03/11/98, which is in the 1st and 2nd Periods; from 03/12/98 to 08/05/98, which is in the 2nd, 3rd and 4th Periods. Therefore, Hoffa did not actually work a complete 13 week period because he was laid off at various times in each of the four relevant periods. Thus, because Hoffa "worked less than a complete period of thirteen calendar weeks" his benefits should be calculated pursuant to Section 309(d.2) of the Act. *Bethlehem Structural Products.*

Like *Bethlehem Structural Products,* the issue before us is not whether Claimants were *employed* by Employer in the 52 weeks preceding their injuries. Rather, the issue is whether Claimants *worked* a complete 13 week period in the 52 weeks preceding their injuries. Because we conclude that none of the Claimants worked a complete 13 week period in the 52 weeks preceding their injuries, we do not need to determine whether Claimants were "employed" by Employer in the 52 weeks preceding their injuries.

Accordingly, the order of the Board is reversed and this case is remanded to the Board, for further remand to the WCJ, to allow the WCJ to correctly calculate the average weekly wages of Claimants pursuant to Section 309(d.2) of the Act and to make an appropriate award of compensation benefits.

***ORDER***

AND NOW, April 23, 2003, the orders of the Workers' Compensation Appeal Board docketed at A00–2551, A00–2552 and A00–2553 and each dated February 28, 2002 are hereby REVERSED and this case is RE-MANDED to the Board for further remand to the WCJ for the reasons set forth in the foregoing opinion.

Jurisdiction Relinquished.