**H.A. HARPER SONS, INC. and Donegal Mutual Insurance, Petitioners**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SWEIGART and BWC Legal Division), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 4, 2013.
Decided Jan. 3, 2014.

Lisa A. Miller, Exton, for petitioners.

Deborah J. Schwartz, Assistant Counsel, Harrisburg, for respondent Commonwealth of Pennsylvania, Bureau of Workers' Compensation.

BEFORE: McGINLEY, Judge, BROBSON, Judge [1], and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge BROBSON.

Petitioners H.A. Harper Sons, Inc. and Donegal Mutual Insurance (collectively Employer) petition for review of an order of the Workers' Compensation Appeal Board (Board), dated April 24, 2013. The Board reversed an order of a Workers' Compensation Judge (WCJ), which granted Employer's Application for Supersedeas Fund Reimbursement (Application). We now reverse.

Gregory Sweigart (Claimant) filed a claim petition against Employer, seeking workers' compensation benefits. By order dated June 11, 2008, a WCJ granted the claim petition. In the process of granting the claim petition, the WCJ determined, in part, that Claimant had an average weekly wage (AWW) of $542.50 and a corresponding compensation rate of $389.50 per week. On June 30, 2008, Employer appealed the WCJ's order granting the claim petition,

---

1. This case was re-assigned to the authoring judge on December 3, 2013.

challenging the calculation of Claimant's AWW. In connection with its appeal, Employer also filed an application for supersedeas, which the Board promptly denied by order dated July 29, 2008.

On or about January 26, 2009, while the appeal of the determination of Claimant's AWW was still pending, Employer filed a termination petition, averring that Claimant had fully recovered from his work-injuries as of November 5, 2008. Thereafter, the parties settled the case by way of an agreement for compromise and release (C & R Agreement) pursuant to which Employer agreed to pay Claimant $50,000. Employer's termination petition was amended to become a petition to seek approval of a compromise and release. By order dated May 21, 2009, the WCJ approved the C & R Agreement and directed the parties to comply with its terms. The WCJ's order further provided that "[u]pon payment of the specified benefits to ... Claimant and his attorney, [Employer] shall be released from liability for Claimant's work-related injury *to the extent set forth in the [C & R] Agreement."* (Reproduced Record (R.R.) at 32a (emphasis added).)

Thereafter, by order dated December 22, 2009, the Board granted Employer's appeal of the claim petition as it related to the calculation of Claimant's AWW. Specifically, the Board modified the WCJ's June 11, 2008 order to reflect a reduced AWW of $226.98 and a corresponding compensation rate of $204.28 per week. The Board affirmed the WCJ's order in all other respects.

As a result of the Board's modification of the claim petition award, Employer filed the subject Application, seeking reimbursement from the Workers' Compensa-

tion Supersedeas Fund[2] (Fund) for overpayment of compensation to Claimant as a result of the incorrect calculation of Claimant's AWW by the WCJ. Employer submitted proof of payment showing that from June 30, 2008 (the date of the denial of its supersedeas request) until the final outcome of the proceedings on May 21, 2009, it overpaid compensation in the amount of $20,241.90. The Commonwealth filed an answer, denying that Employer was entitled to reimbursement from the Fund, and the Bureau of Workers' Compensation Legal Division (Bureau) assigned the Application to the WCJ for judicial determination. By decision and order dated November 19, 2010, the WCJ granted the Application, concluding that Employer was entitled to reimbursement from the Fund for the full amount of $20,241.90. The Bureau appealed to the Board, which reversed.

In concluding that Employer was not entitled to reimbursement, the Board reasoned that "[t]he essential dispute ..., in determining whether the WCJ appropriately granted reimbursement from the Fund, is whether the C & R [Agreement] approved during the pendency of [Employer's] appeal of [the] WCJ['s] determination of Claimant's AWW resolved all litigation and/or liability." (Reproduced Record (R.R.) at 81a.) The Board, relying on our opinions in *Stroehmann Bakeries v. Workers' Compensation Appeal Board (Plouse),* 768 A.2d 1193 (Pa.Cmwlth.2001), *Bethlehem Structural Products v. Workers' Compensation Appeal Board (Vernon),* 789 A.2d 767 (Pa.Cmwlth.2001), *appeal denied,* 568 Pa. 706, 796 A.2d 986 (2002), *Department of Labor v. Workers' Compensation Appeal Board (U.S. Food Service),* 932

---

2. Section 443 of the Workers' Compensation Act (the Act), Act of June 2, 1915, *as amended,* added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. § 999, establishes the Fund in the State's Treasury.

A.2d 309 (Pa.Cmwlth.2007), and *Coyne Textile v. Workers' Compensation Appeal Board (Voorhis)*, 840 A.2d 372 (Pa. Cmwlth.2003), reasoned that it was clear from the language of the C & R Agreement that it was the final outcome of the proceedings. For that reason, the Board concluded that the WCJ had erred in granting Employer relief.

■ On appeal to this Court,[3] Employer essentially argues that the Board erred when it reversed the WCJ's grant of the Application, because the C & R Agreement did not settle the issue of the AWW calculation and, following the approval of the C & R Agreement, Employer did not withdraw the appeal of the AWW issue pending before the Board.

■ The General Assembly created the Fund for the purpose of reimbursing, under prescribed circumstances, an employer who has been ordered to pay workers' compensation benefits that are later determined not to be owed. In so doing, "[t]he Legislature recognized that recoupment from the claimant was impractical and would undermine the benevolent purpose of the Act." *Rogers v. Workmen's Comp. Appeal Bd. (Strouse/Greenberg & Co.)*, 129 Pa.Cmwlth. 230, 565 A.2d 209, 211 (1989) (emphasis omitted) (quoting *Bureau of Workers' Comp. v. Workmen's Comp. Appeal Bd. (Allstate Insur. Co.)*, 96 Pa.Cmwlth. 566, 508 A.2d 388, 390 (1986), *appeal denied*, 514 Pa. 632, 522 A.2d 560 (1987)). The Fund injects fairness into a system that requires an employer to pay a disputed award of benefits after the award is appealed. *US Food Service*, 932 A.2d at 312.

With regard to reimbursement, Section 443(a) of the Act provides, in relevant part:

(a) If, in any case in which a supersedeas has been requested and denied under the provisions of section 413 or section 430, payments of compensation are made as a result thereof and *upon the final outcome of the proceedings*, it is determined that such compensation was not, in fact, payable, the insurer who has made such payments shall be reimbursed therefor.

(Emphasis added.) Thus, an employer must satisfy the following five requirements in order to be entitled to reimbursement from the Fund:

1. A supersedeas must have been requested;

2. The request for supersedeas must have been denied;

3. The request must have been made in a proceeding under Section 413 of the Act;[ ]

4. Payments were continued because of the order denying supersedeas; and

5. *In the final outcome of the proceedings 'it is determined that such compensation was not, in fact, payable.'*

*Bureau of Workers' Comp. v. Workers' Comp. Appeal Bd. (Ins. Co. of N. Am.)*, 101 Pa.Cmwlth. 552, 516 A.2d 1318, 1320 (1986) (*INA*) (emphasis added) (footnote omitted).

Section 449 of the Act,[4] 77 P.S. § 1000.5, allows parties to enter into a compromise and release of liability under the Act, subject to certain provisions. Section 449(b) of the Act provides, in part:

---

**3.** This Court's review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Vinglin-*

*sky v. Workmen's Comp. Appeal Bd. (Penn Installation)*, 139 Pa.Cmwlth. 15, 589 A.2d 291, 293 (1991).

**4.** Added by the Act of June 24, 1996, P.L. 350.

(b) Upon or after filing a petition, the employer or insurer may submit the proposed compromise and release by stipulation signed by both parties to the workers' compensation judge for approval. The workers' compensation judge shall consider the petition and the proposed agreement in open hearing and shall render a decision. The workers' compensation judge shall not approve any compromise and release agreement unless he first determines that the claimant understands the full legal significance of the agreement. The agreement must be explicit with regard to the payment, if any, of reasonable, necessary and related medical expenses....[5]

■ Once approved, a valid compromise and release agreement is "final, conclusive, and binding on the parties." *Dep't of Labor v. Workers' Comp. Appeal Bd.*, 932 A.2d 309, 314 (Pa.Cmwlth.2007). "If some liability is not compromised and released, then that liability still exists, and the agreement only extinguishes liability where the person with the claim specifically agrees to relieve the entity of that liability." *US Food Service*, 932 A.2d at 314.

In *Stroehmann Bakeries*, this Court considered whether a compromise and release agreement entered into by the parties and approved by a WCJ rendered the employer's pending termination petition moot. The WCJ had dismissed the termination petition as moot, and the Board affirmed the WCJ's decision. On appeal to this Court, we stressed that, in providing for compromise and release agreements, the General Assembly sought to encourage settlements and finality. *Stroehmann Bakeries*, 768 A.2d at 1196. We also focused on the language of the compromise and release agreement, which identified the "issues involved in this claim" as "[w]hether the [c]laimant's disability from [the] work-related injury has ceased." *Id.* We construed that statement to mean that the parties intended to settle "the same exact issue that was before the WCJ," via the termination petition, "at the time the agreement was approved." *Id.* Under

5. Section 449(c) of the Act further provides: Every compromise and release by stipulation shall be in writing and duly executed, and the signature of the employe, widow or widower or dependent shall be attested by two witnesses or acknowledged before a notary public. The document shall specify:
    (1) the date of the injury or occupational disease;
    (2) the average weekly wage of the employe as calculated under section 309;
    (3) the injury, the nature of the injury and the nature of disability, whether total or partial;
    (4) the weekly compensation rate paid or payable;
    (5) the amount paid or due and unpaid to the employe or dependent up to the date of the stipulation or agreement or death and the amount of the payment of disability benefits then or thereafter to be made;
    (6) the length of time such payment of benefits is to continue;
    (7) in the event of a lien for subrogation under section 319,[ ] the total amount of compensation paid or payable which should be allowed to the employer or insurer;
    (8) in the case of death:
    (i) the date of death;
    (ii) the name of the widow or widower;
    (iii) the names and ages of all children;
    (iv) the names of all other dependents; and
    (v) the amount paid or to be paid under section 307[ ] and to whom payment is to be made;
    (9) a listing of all benefits received or available to the claimant;
    (10) a disclosure of the issues of the case and the reasons why the parties are agreeing to the agreement; and
    (11) the fact that the claimant is represented by an attorney of his or her own choosing or that the claimant has been specifically informed of the right to representation by an attorney of his or her own choosing and has declined such representation. (Footnotes omitted.)

those circumstances, we agreed that the Board properly dismissed the termination petition as moot.

Thereafter, in *Bethlehem Structural,* we applied the reasoning set forth in *Stroehmann Bakeries* to deny a claimant's motion to quash a petition for review filed with this Court based upon the parties' compromise and release agreement. The employer in *Bethlehem Structural* had filed a review petition, challenging the calculation of the claimant's AWW. A WCJ denied the review petition, and the employer appealed to the Board. Thereafter, the parties entered into a compromise and release agreement, which included a provision that the employer "will not withdraw its appeal to the Board on the issue of the correct calculation of [the claimant's AWW] 'so that its right to supersedeas fund reimbursement for previously paid benefits will be unimpaired.'" *Bethlehem Structural,* 789 A.2d at 770. Ultimately, the Board affirmed the WCJ's order, and the employer petitioned this Court for review. Despite the reservation of rights provision in the compromise and release agreement, the claimant filed a motion to quash the petition for review, arguing that, because the agreement resolved all the issues between the parties, the petition for review was moot under *Stroehmann Bakeries.* We concluded, however, that the compromise and release agreement did not settle the issue of whether the claimant's average weekly wage was correctly calculated, because the specific language cited above indicated that the parties still disputed the issue. Instead, the agreement settled the employer's obligation to pay the claimant benefits in light of his alleged ability to return to some form of work. The agreement also fixed a lump sum to resolve any future indemnity and medical bills arising from the work injury. Because the compromise and release agreement did "not resolve the issue of the amount of weekly benefits due and owing under the notice of compensation payable" for the period prior to the date of the compromise and release agreement, we denied the claimant's motion to quash.

In *US Food Service,* we applied the reasoning advanced by the Court in both *Stroehmann Bakeries* and *Bethlehem Structural* to an appeal of the Board's denial of a request for Fund reimbursement based upon the existence of a compromise and release agreement. In *US Food Service,* the Bureau petitioned for review of an order of the Board, which affirmed an order of a WCJ granting an application for supersedeas fund reimbursement. The claimant and the employer had entered into a compromise and release agreement prior to the WCJ granting the employer's termination petition. Subsequent to the granting of the termination petition, the employer sought reimbursement from the Fund, which the WCJ granted and the Board affirmed. On appeal to this Court, the Bureau argued that it was an error to grant the application because, prior to the WCJ's grant of the employer's termination petition, the claimant and the employer had entered into a compromise and release agreement, "which fully and finally resolved all past, present and future liability." *US Food Serv.,* 932 A.2d at 312. We again considered the language of the compromise and release agreement, noting that it contained broad release language (*i.e.,* " 'all . . . past, present, and future benefits' ") and provided that the " 'parties wish to avoid . . . additional litigation' " and that the " '[e]mployer wish[es] to extinguish all liability.' " *Id.* at 315. In light of the "all-encompassing language" identified above and the absence of any reservation of the right to continue litigation of the termination petition, we concluded that the agreement resolved all outstanding litigation, including

the termination petition. *Id.* Thus, the compromise and release agreement, "as the final agreement of the parties, was the 'final outcome of the proceedings' under Section 443 of the Act." *Id.* As a result, the termination petition was not ripe for disposition, and the WCJ and Board erred in granting the application for reimbursement when the compromise and release agreement was executed prior to the grant of the employer's termination petition.

Finally, in *Coyne* we considered issues similar to those in *Stroehmann Bakeries.* Specifically, we considered whether the Board erred in affirming a WCJ's decision dismissing the employer's termination petition as moot and dismissing claimant's petition challenging a suspension of benefits as moot based upon the existence of a compromise and release agreement. In *Coyne,* during the pendency of both of those petitions before the WCJ, the parties entered into a compromise and release agreement relating to a 1998 work injury, wherein they agreed to settle all future compensation in the case pursuant to Section 449 of the Act. By decision and order dated August 22, 2000, the WCJ approved the compromise and release agreement, concluding, in part, that "by the express terms of the [agreement], the [t]ermination and [c]hallenge [p]etitions were to remain open to be subsequently adjudicated by the WCJ after approval of the [compromise and release agreement]." *Coyne,* 840 A.2d at 374. Nevertheless, thereafter the WCJ denied and dismissed as moot the two petitions before him, concluding that the compromise and release agreement had disposed of all the issues in the underlying petitions. The WCJ noted that "the sole reason for [the] employer's request that the ... petitions be adjudicated after the [compromise and release agreement] was approved was to potentially secure an alleged overpayment reimbursement from the [Fund] for benefits previously paid to

[the] claimant." *Id.* The employer appealed to the Board, which affirmed the WCJ's order. On appeal to this Court, we again focused on the language of the agreement, concluding that the facts were more akin to those in *Bethlehem Structural* than *Stroehmann Bakeries.* We explained:

> On its face, it is clear and without any trace of ambiguity that the [agreement] settled only the issue of potential [e]mployer liability "from August 16, 2000 into the future." As such, the instant [agreement] did not dispose of the issue of compensation and/or benefits due to [the c]laimant from [the e]mployer for the period prior to August 16, 2000.
>
> Such an express reservation of this particular issue, when further defined within a time frame that is expressly excluded from the [agreement], serves to render *Stroehmann Bakeries* distinguishable from, and unpersuasive towards, the instant matter. [The e]mployer's stated motive of seeking supersedeas reimbursement in its reservation of a right to adjudicate the [t]ermination and [c]hallenge [p]etitions, when coupled with the [agreements] express time frame making it applicable to liability only beyond the date at issue in those [p]etitions, does not serve to render the issues in those [p]etitions moot, and the Board erred in affirming on that basis. *Bethlehem Structural Products.*

*Id.* at 377 (internal citations omitted). For those reasons, we reversed the Board's order and remanded the case for further proceedings on the termination and challenge petitions.

Here, the subject C & R Agreement provides that the parties agree "to settle and resolve Claimant's entitlement to past, present and future indemnity, medical, and specific loss benefits related to the work

injury of April 7, 2007" in exchange for a lump sum payment of $50,000. (R.R. at 33a.) The C & R Agreement further provides, in pertinent part:

6. State the amount of the payment of indemnity benefits to be made at or after the date of the stipulation or agreement or death and the length of time such payment of benefits is to continue.

$50,000.00 for a full Compromise and Release

. . . .

13. List all benefits received by, or available to, the claimant e.g. Social Security (Disability or Retirement), private health insurance, Medicare Medicaid, etc. For such benefits, list the amount(s), period of payments of benefits, and the status of eligibility determination.

... As of the date of the order approving this Compromise and Release ... Agreement, Claimant will be paid a lump sum of $50,000 less a twenty (20%) percent attorney fee.... The sum herein received by Claimant is in exchange for the Compromise and Release of all *future* wages under the Act.

. . . .

15. State the issues involved in this claim and the reasons why the parties are entering into this agreement.

Whether Claimant is entitled *to additional* past, present and future indemnity, medical, or specific loss benefits related to the work-injury of April 17, 2007? Whether Claimant is fully recovered from his April 17, 2007 work-injury? The parties have desired to settle and resolve Claimant's entitlement to past, present and future indemnity, medical, and specific loss benefits related to the work-injury of April 17, 2007. (R.R. at 33a–35a (emphasis added).)

As noted above, citing *Stroehmann Bakeries*, this Court in *Bethlehem Structural* held that the test to determine whether a subsequent compromise and release agreement would moot a pending appeal of a prior ruling by a workers' compensation judge or the Board was whether the agreement "settled the exact issue raised" in the appeal. *Bethlehem Structural*, 789 A.2d at 770. The question before us in this appeal, then, is whether the C & R Agreement settled the Employer's challenge to the June 11, 2008 Decision and Order that set Claimant's average weekly wage (AWW) at $542.50 with a corresponding compensation rate of $389.50. Focusing on the relevant provisions of the C & R Agreement, we conclude that it did not settle the dispute as to the AWW.

First, the C & R Agreement arose out of a termination petition filed by Employer, which is a proceeding to cut-off *future*, not past, benefits. In paragraph 6 of the C & R Agreement, the parties agree that Employer had paid all indemnity benefits due up to the date of the C & R Agreement. (R.R. at 33a.) In paragraph 13, the parties agreed to a single lump sum payment of $50,000 to Claimant "in exchange for a Compromise and Release *of all future wages* " under the Act. (*Id.* at 35a (emphasis added).) This language clearly indicates the parties' intent that the C & R Agreement was executed to resolve amicably only Employer's termination petition as to *future* benefits.

The Board, in its analysis, focused on paragraph 15 of the C & R Agreement and language therein suggesting a desire to enter into a settlement agreement that would resolve past indemnity payments as well. It does so, however, by only quoting a portion of paragraph 15. Reading para-

graph 15 in its entirety, along with paragraph 13, we conclude that the parties' intent in the C & R Agreement was to resolve Employer's termination petition. The reference in the statement of issues resolved to *additional* (*i.e.,* unpaid) past, present, and future indemnity payments is directly related to resolution of that petition. Conspicuously absent from the statement of issues resolved is the issue of whether Employer overpaid Claimant for past benefits. The final sentence of paragraph 15—*i.e.,* the "reason" for the parties decision to enter into the C & R Agreement, must be read in context of the issues defined earlier in that paragraph and in paragraph 13. Doing so compels the conclusion that nothing in the C & R Agreement addresses any pending disputes over the amount of benefits *previously* paid.

Employer's pending appeal before the Board with respect to the AWW issue related not only to future indemnity payments (which Employer compromised in the C & R Agreement), but also to payments Employer made to Claimant between the time of the WCJ's June 11, 2008 order ruling on the claim petition through the date of the C & R Agreement. As a result of the Board's ruling on the AWW issue, which reduced Claimant's AWW to $226.28, with a corresponding reduced compensation rate of $204.28, the Board effectively held that Employer paid Claimant approximately $20,000 that Employer would not have paid if (a) the WCJ had not erred in its AWW calculation or (b) the Board had granted Employer's supersedeas request in connection with its appeal of the AWW decision.

■ This is not the situation the Court faced in *Stroehmann Bakeries,* where we

characterized the employer's effort to obtain supersedeas fund reimbursement, despite entering into a compromise and settlement agreement with the claimant, as "essentially an attempt to place the cost for its agreed to liability on the shoulders of others." *Stroehmann Bakeries,* 768 A.2d at 1196. Employer in this case is not seeking supersedeas fund reimbursement to subsidize the lump-sum payment made as a result of the C & R Agreement. To the contrary, Employer seeks supersedeas fund reimbursement for amounts erroneously paid to Claimant prior to execution of the C & R Agreement and for which, under no circumstances, could Employer seek reimbursement from Claimant.[6]

The issue of whether Employer overpaid past indemnity benefits due to an erroneously-calculated AWW was not settled by the C & R Agreement, which, by its terms, related only to claims that Claimant may have pursued for *additional and unpaid* past, present, and future benefits. Accordingly, because the C & R Agreement did not "settle[ ] the exact issue raised" by Employer in its AWW appeal to the Board, *Bethlehem Structural,* 789 A.2d at 770, the Board erred in reversing the order of the WCJ, granting Employer's Application.

Accordingly, we reverse the order of the Board.

### *ORDER*

AND NOW, this 3rd day of January, 2014, the order of the Workers' Compensation Appeal Board is hereby REVERSED.

---

**6.** "[T]he Act does not provide any authority for reimbursement to an employer when there has been an overpayment of benefits. When there is an overpayment of benefits to a claimant who is not entitled to those payments, relief must be obtained from the supersedeas fund." *Hurst v. Workers' Comp. Appeal Bd. (Preston Trucking Co.),* 823 A.2d 1052, 1061 (Pa.Cmwlth.2003).