**STROEHMANN BAKERIES, INC., Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PLOUSE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 1, 2000.

Decided Feb. 5, 2001.

Audrey J. Copeland, Philadelphia, for petitioner.

No appearance entered on behalf of respondent.

Before SMITH, Judge, KELLEY, Judge and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Stroehmann Bakeries, Inc. (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a workers' compensation judge (WCJ) that dismissed Employer's termination/suspension petition and Joseph Plouse's (Claimant) claim petition as moot based on a conclusion that the parties' signed compromise and release agreement (C & R) controlled any issues between the parties. We affirm.

On September 18, 1995, Claimant[1] filed a claim petition alleging that he initially sustained a work-related injury on November 9, 1994, but that he returned to work. Claimant further alleged that on February 15, 1995, he slipped at work and was re-injured. Although Employer at first denied benefits for the February 15th injury, it subsequently accepted liability and issued a notice of compensation payable (NCP), recognizing the February 15th injury as an injury to Claimant's "thoracic and lumbar area back." (NCP, dated June 5, 1996). Then on January 8, 1997, Employer filed a petition to suspend and/or terminate Claimant's benefits, alleging that Claimant was fully recovered as of October 1, 1996 or was capable of returning to his pre-injury job.

The petitions were consolidated for hearings before WCJ Mark Peleak and were litigated to conclusion. However, before WCJ Peleak issued his decision, the parties agreed to enter a C & R, which was approved by WCJ Karl Baldys on September 14, 1998. The terms of the C & R provided that Claimant would be paid a lump sum of $30,000 in exchange for a release of Employer's liability to pay wage loss and/or medical benefits arising out of the February 15, 1995 injury and that all benefits were to cease as of August 7, 1998.

Despite entering into the C & R, Employer requested that WCJ Peleak still issue his decision, based on the record, which included testimony provided by Claimant on his own behalf and the deposition testimony of Lawrence S. Tomack, M.D., and Theodore F. Them, M.D., both presented by Employer.[2] The WCJ also noted that Claimant presented no medical testimony in opposition to that presented by Employer. Furthermore, pertinent to the issues raised in this case, the WCJ found that Dr. Them concluded that Claimant was fully recovered as of April 23, 1997. However, the WCJ cited the C

---

1. By order of this Court, dated September 21, 2000, Claimant's attorney was granted his application to withdraw as counsel and then on October 19, 2000, a dormant order for failure to file a brief was entered.

2. The WCJ's decision included a finding based on Claimant's testimony that one of Claimant's treating physicians released Claimant to light duty work in September of 1995, but that Employer refused his return without a release to full duty. The WCJ also included findings based on the testimony of Drs. Tomack and Them, both of whom concluded that Claimant was fully recovered from his work injuries.

& R and concluded in his decision issued on May 26, 1999 that:

> 2. Although the medical evidence submitted by the Employer, Stroehmann Bakeries, shows that the Claimant had recovered from his work injury by April 23, 1997, the parties entered into a compromise and release agreement setting forth that the Claimant would be paid compensation through August 7, 1998 in exchange for a full and complete release of any further benefits, thus the outstanding petitions are moot and the parties should hereinafter be controlled by the compromise and release agreement they have entered into.

(WCJ's decision, p. 4). Accordingly, the WCJ dismissed the petitions as moot and ordered that the C & R controlled.[3] On appeal, the Board affirmed, concluding that the language of the C & R controlled and that Employer can not constructively attempt to amend the C & R by continuing this litigation.[4]

 On appeal to this Court,[5] Employer argues that the WCJ and the Board erred in determining that its termination petition was moot and in failing to issue a decision on the merits. Employer also argues that, although the WCJ correctly found that evidence supported an earlier date of full recovery, he erred in refusing to rule on the termination petition.

In support of its argument, Employer cites Sections 418[6] and 422(a)[7] of the Workers' Compensation Act (Act). The portion of Section 418 of the Act upon which Employer relies states in pertinent part that:

> The [WCJ]...shall make a record of hearings, and shall make, in writing and as soon as may be after the conclusion of the hearing, such findings of fact, conclusions of law, and award or disallowance of compensation or other order, as the petition and answers and the evidence produced before him and the provisions of this act shall, in his judgment, require.

The portion of Section 422(a) of the Act relied on by Employer states that the parties are entitled to a reasoned decision that requires that "[u]ncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection."

Based on these sections of the Act and on Employer's allegation that the C & R was not a part of the record before WCJ Peleak, Employer contends that it is entitled to a reasoned decision based solely on the evidence presented by the parties in this case. In the alternative, Employer argues that even if the WCJ could consider the C & R, the C & R resolved future issues beyond the September 1998 approval date, while the termination petition, filed

---

3. The certified record contains a Board order mailed to the parties on November 23, 1999, indicating that neither party appealed from the WCJ's order approving the C & R. The November 23rd order then provides that Employer's appeal from WCJ Peleak's decision was withdrawn because the C & R disposes of all matters. However, the certified record also contains Employer's letter, dated December 6, 1999, that indicates that the Board's order was in error and requests that the appeal to the Board proceed.

4. We note that following the approval of the C & R, Claimant essentially withdrew from the continuing litigation, leaving uncontested both Employer's appeal to the Board and to this Court.

5. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Cmwlth. 436, 550 A.2d 1364 (1988).

6. Act of June 2, 1915, P.L. 736, added by the Act of June 26, 1919, P.L. 642, *as amended*, 77 P.S. § 833.

7. Redesignated and amended by the Act of July 2, 1993, P.L. 190, 77 P.S. § 834.

on January 7, 1997, sought relief as of that date. As further support for this argument, Employer quotes paragraph 16 of the C & R, which states that "[t]he parties wish to resolve and settle claimant's entitlement to future workers' compensation benefits," and points out that nowhere in the C & R did Employer surrender its right to pursue its termination petition.

We first note that the certified record contains the C & R document. Although our review of the certified record does not provide information as to how the document became a part of the record, the WCJ, the Board and this Court would be remiss if we assumed that the C & R did not exist. Furthermore, Employer fails to quote the response to the directive in paragraph 15 of the C & R,[8] which we set forth as follows:

> 15. State the issues involved in this claim: Whether the Claimant's disability from 2–15–95 work-related injury has ceased.

We construe this statement in the C & R to mean that the parties intended to settle the question concerning Claimant's full recovery from his work-related injury, and in turn settle the same exact issue that was before the WCJ at the time the agreement was approved and was likewise the issue raised before the Board and now before this Court. To continue to litigate this selfsame issue after entering into the C & R was, at a minimum, disingenuous on Employer's part. After a full review of the record before us, we conclude that the WCJ complied with the provision of the Act and provided a reasoned decision based on all the evidence.

We also note Employer's admission as to motive for seeking the decision on the merits of the termination petition even after signing the C & R. Simply stated, with a favorable result, Employer indicated that it intends to apply for reimbursement from the supersedeas fund to recoup the payments made to Claimant for the period between January 7, 1997 (date termination petition filed) and August 7, 1998 (date agreed to by the parties in the C & R to end liability). This is essentially an attempt to place the cost for its agreed to liability on the shoulders of others. Moreover, we recognize that prior to the 1996 amendments to the Act, which provided for C & R agreements, a WCJ could base a decision on stipulations of fact if he or she was satisfied that it was "fair and equitable to [the] parties involved." 34 Pa.Code § 131.91. The criteria now requires that the WCJ must determine that the claimant understands the full legal significance of the agreement; the best interests or the fair and equitable standard is no longer a necessary prerequisite. Section 449(b) of the Act, 77 P.S. § 1000.5(b). Finally, we believe that the legislature intended that a C & R should be on equal footing with civil settlements, which are based on a public policy that encourages settlements and stresses finality. *See Walton v. Avco Corp.*, 530 Pa. 568, 610 A.2d 454 (1992).

Accordingly, for the reasons stated above, we affirm the Board's order.

### ORDER

NOW, February 5, 2001, the order of the Workers' Compensation Appeal Board, at No. A99–1915, dated June 16, 2000, is affirmed.

---

**8.** *See* Section 449(c)(10) of the Act, added by the Act of June 24, 1996, P.L. 350, 77 P.S. § 1000.5(c)(10), which requires that the C & R agreement specify "a disclosure of the issues of the case and the reasons why the parties are agreeing to the agreement."

**LEHIGH VALLEY HOSPITAL,**
Appellant,

v.

**The COUNTY OF MONTGOMERY and
Frank P. Lalley, Sheriff of the
County of Montgomery.**

Commonwealth Court of Pennsylvania.

Argued April 12, 2000.
Decided Feb. 9, 2001.

Oldrich Foucek, III, Allentown, for appellant.

Michael P. Creedon, Norristown, for appellees.

Before KELLEY, Judge, FLAHERTY, Judge (P.), and RODGERS, Senior Judge.

FLAHERTY, Judge.

Lehigh Valley Hospital (Hospital) appeals from an order of the Court of Common Pleas of Lehigh County (trial court) which granted the motion for summary judgment filed by the Appellees, the County of Montgomery (County) and Frank P. Lalley, Sheriff of the County (Sheriff). We affirm.

On September 6, 1996, Robert Streisel (Streisel) was operating a vehicle when he ran a red light and struck another vehicle. Streisel was transported by air ambulance to Hospital, where he was admitted. Streisel was unconscious until September 12, 1996. On that same day, an arrest warrant was issued and Streisel was arraigned at bedside. Following the arraignment, Sheriff's department assigned a deputy to guard Streisel. Streisel remained in the Hospital until his discharge on September 21, 1996.

Determining that Streisel did not have medical insurance, Hospital forwarded a preliminary bill for Streisel's medical services to Sheriff's department. Helene Friedman (Friedman), office manager for Sheriff's department, called Sandra Colon (Colon), on September 17, 1996, and asked that Hospital discount the bill for services rendered to Streisel. During the telephone conversation, Friedman advised Colon that she did not know if either County or Sheriff would take responsibility for the bill. On September 19, 1996, Friedman again called Colon, at which time Colon advised Friedman that Hospital would discount the bill of Hospital by thirty-five percent. During the September 19, 1996 telephone conversation, according to Colon, Friedman advised her that County would accept responsibility for the pay-

ment of Streisel's bill. In a letter dated that same date addressed to Friedman, Colon confirmed that Hospital would discount Streisel's hospital bill by thirty-five percent.

On October 22, 1996, Hospital submitted its final bill in the amount of $45,456.61 directly to Friedman. Friedman then forwarded a purchase requisition dated October 22, 1996, enclosing the hospital bill, to the County purchasing department. In a letter dated October 31, 1996, addressed to Colon, the County's chief operating officer informed Hospital that County was not responsible for the payment of Streisel's Hospital bill.

On December 22, 1997, Hospital filed a four-count complaint in the trial court seeking payment from County and Sheriff for medical services provided by Hospital to Streisel. In Counts I and II, Hospital alleged that County and Sheriff breached their duty under Section 1 of the Second Class County Prison Board Act, Act of December 10, 1980, P.L. 1152, *as amended,* 61 P.S. § 407.1, to pay for the costs of medical services provided to Streisel. In Count III, Hospital alleged that County and Sheriff were estopped from denying liability for Streisel's medical expenses because Hospital detrimentally relied on their promise to pay for the medical expenses. In Count IV, Hospital alleged that County and Sheriff breached an express contract to pay for Streisel's medical costs. County and Sheriff filed a motion for summary judgment which the trial court granted and this appeal followed.

■ On appeal, Hospital does not argue that the trial court erred in granting summary judgment with respect to Counts I and II. Hospital, however, does maintain that the trial court erred in granting summary judgment with respect to Counts III and IV. Our review of an order granting summary judgment is limited to a determination of whether there has been an error of law or a manifest abuse of discretion. *Herman v. Greene County Fair Board,* 112 Pa.Cmwlth. 615, 535 A.2d 1251

(1988). Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories and admissions on file, along with affidavits, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. *Case v. Lower Saucon Township,* 654 A.2d 57 (Pa. Cmwlth.1995). However, before addressing Hospital's argument concerning Counts III and IV, we will first address Appellees' contention that Hospital's appeal should be quashed.

■ Appellees argue that Hospital failed to appeal the trial court order within ten days of its issuance as is required by Pa. R.A.P. 903(c)(3). That rule provides that appeals shall be taken within ten days of "an order in any matter arising under the Local Government Unit Debt Act or similar statute relating to the public debt." Here, Appellees argue that if Hospital were successful in its attempt to have Appellees pay for Streisel's medical treatment, payment of Streisel's debt would require the authorization of a public debt. We agree with Hospital, however, that payment of Streisel's bill would not require authorization of a public debt. Section 2001 of the Second Class County Code, Act of July 28, 1953, P.L. 723, *as amended,* 16 P.S. § 5001 referenced by Appellees does not require authorization of a public debt. Rather, that section authorizes the County Commissioners to make contracts. As it does not require the authorization of a public debt, we refuse to quash the appeal for not having been filed within ten days of the trial court order.

Moreover, we refuse to quash the appeal based on Appellees' assertion that Hospital filed its brief and reproduced record in an untimely fashion. The record reveals that on October 5, 1999 this court issued an order directing that Hospital file its brief and reproduced record on October 20, 1999. Hospital mailed its brief and reproduced record on October 19, 1999 to this court as is evidenced by a U.S. Postal

Service Certificate of Mailing. (Hospital's brief at p. A3.) As Hospital complied with this court order, we decline to quash the appeal.

 Next, we will address Hospital's argument that the trial court erred in granting summary judgment with respect to Count III, wherein Hospital alleged that it detrimentally relied on Appellees' promise to pay for Streisel's hospital expenses. Initially, we observe that a cause of action under detrimental reliance or promissory estoppel arises "when a party relies to his detriment on the intentional or negligent representations of another party, so that in order to prevent the relying party from being harmed, the inducing party is estopped from showing that the facts are not as the relying party understood them to be." *Thomas v. E.B. Jermyn Lodge No. 2*, 693 A.2d 974, 977 (Pa.Super.1997), *appeal denied*, 550 Pa. 706, 705 A.2d 1309 (1998). The elements of promissory estoppel or detrimental reliance are: (1) misleading words, conduct or silence by the party against whom estoppel is asserted; (2) unambiguous proof of reasonable reliance on the misrepresentation by the party seeking to assert the estoppel; and (3) no duty on the party seeking to assert estoppel. *Id.*

 Here, the trial court determined that as to the promissory estoppel claim, in accordance with *Pittsburgh Baseball, Inc. v. Stadium Authority of the City of Pittsburgh*, 157 Pa.Cmwlth. 478, 630 A.2d 505 (1993), one who contracts with a municipal corporation must at their peril inquire into the power of the corporation or its officers to make the contract or incur debts. In this case, Colon failed to inquire as to whether Friedman had the authority to accept liability for Streisel's medical expenses. At no time did Friedman state that she had the authority to bind County (Colon deposition at p. 117), and Colon had no previous dealings with County or Friedman. (*Id.*) The authority to make contracts rests with the County Commissioners, 16 P.S. § 5001, and to be enforceable, all contracts over $10,000.00 are to be in writing. Sections 1801 and 1802 of the County Code, Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. §§ 1801 and 1802.

 Moreover, we also agree with the trial court that Hospital did not rely on statements made by Friedman in providing medical services to Streisel. At the time of Streisel's admission to Hospital, no employees of County or Sheriff's department were present and, as such, did not request medical care for Streisel. Streisel received thirteen days of medical care before Friedman and Colon had their first conversation. After the initial conversation, Streisel was discharged two days later. Hospital admits that it is a charitable institution which provides medical services regardless of a patient's ability to pay. (Hospital brief at p. 15.) Although Hospital argues that it has a duty to seek payment when available, it does not follow that Hospital relied on Friedman's statements in providing care, especially in light of the fact that care had already been rendered to Streisel for thirteen days before Friedman first spoke with Colon.

 We also agree with the trial court that as to Count IV, wherein Hospital alleges that County and Sheriff breached their agreement to pay Streisel's medical bills, the Statute of Frauds requires that a promise to pay for the debt of another must be in writing to be enforceable.[1] Hospital argues however, that as a detainee, Sheriff and County owed a duty to

---

### ORDER

---

[*] Additionally, although Hospital alleges that documents exist which, taken together, demonstrate that Hospital reasonably believed that there existed a written agreement whereby Appellees agreed to be responsible for the hospital bill, Hospital, in its complaint, did not allege the existence of a written agreement. Pa. R.C.P. No. 1019(h) provides that a pleading shall state specifically whether any claim or defense is based upon a writing. If so, the pleader shall attach a copy of the writing. As such, Hospital's argument is waived. Moreover, as previously stated, only the Commissioners have the authority to enter into contracts.