DEPARTMENT OF LABOR & INDUSTRY, BUREAU OF WORKERS' COMPENSATION, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (ETHAN–ALLEN ELDRIDGE DIVISION and St. Paul Travelers Insurance Company), Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 19, 2008.
Decided May 6, 2009.

Jennifer M. Irvin, Asst. Counsel, Pittsburgh, for petitioner.

Donald F. Fessler, Jr., Erie, for respondents.

BEFORE: LEADBETTER, President Judge, COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

The Department of Labor & Industry, Bureau of Workers' Compensation (Bureau) petitions for review of an order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) granting Ethan–Allen Eldridge Division's and St. Paul Travelers Insurance Company's (collectively, Employer) Application for Supersedeas Fund Reimbursement (Reimbursement Application).

At issue in this case is whether the WCJ properly granted Employer's Reimbursement Application under Section 443 of the Workers' Compensation Act (Act),[1] when Employer's underlying Petition to Suspend Benefits (Suspension Petition) had been granted after the approval of a compro-

mise and release agreement (the C & R) entered into between Employer and Susan Kilpatrick (Claimant). Through the C & R, Employer and Claimant settled "any workers' compensation claim against the [Employer] for any injury she may have sustained during the course of her employment with [Employer]." (C & R ¶ 15(B).) However, the C & R also contained language that specifically left open, for resolution by a WCJ, the question of whether Employer was entitled to a suspension of benefits for a set period of time. The Bureau contends that the C & R's general release language relinquished all claims, including the Suspension Petition, such that Employer was not able to receive reimbursement through the Supersedeas Fund.

The relevant facts in this matter are as follows. On March 3, 2005, Claimant sustained an injury to her left foot during the course of her employment with Employer. Employer issued a Notice of Compensation Payable on March 15, 2005. On April 11, 2006, Employer filed both a Suspension Petition and a Petition to Terminate Benefits. These petitions included requests for supersedeas, which were denied by the WCJ on May 25, 2006.

On January 12, 2007, during the pendency of the Suspension Petition and Termination Petition, Employer and Claimant executed the C & R and submitted it to the WCJ for approval. In the C & R, Employer agreed to provide Claimant with a lump-sum payment of $22,500 (with $4,500 of that amount allocated for attorney's fees). (C & R ¶ 18(C).) Also in the C & R, Claimant agreed to a waiver of all workers' compensation claims. However, the C & R also contained specific language indicating that the Suspension Petition for

1. Act of June 2, 1915, P.L. 736, added by the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. § 999.

the period of March 10, 2006 until January 12, 2007, would remain open for subsequent determination. The C & R contained the following language relevant to the current proceeding:

10. Summarize all benefits to be paid on and after the date of this stipulation or agreement for reasonable and necessary medical treatment causally related to the injury and the length of time of such payment of benefits is, to continue.

The [C]laimant and the [Employer] have agreed to settle any and all claims arising out of the work incident of March 3, 2005, including but not limited to any wage loss, physical, mental or disfigurement claims, as well as any claims for the payment of medical benefits in exchange for a lump sum payment of $22,500.00. The [Employer] will not be liable for any medical bills incurred by the [C]laimant, subsequent to the approval of the C & R Agreement, regardless of whether said medical bills are reasonable, necessary and causally related to the acknowledged work injury.

. . . .

15. State the issues involved in this claim and the reasons why the parties are entering into this agreement.

A. The [C]laimant and the [Employer] desire to enter into this C & R Agreement so as to avoid the time, costs, and uncertainty of future litigation.

B. The [C]laimant understands and agrees that, subsequent to the approval of this C & R Agreement, *she will be forever precluded from bringing any workers' compensation claim against the [Employer] for any injury she may have sustained during the course of her employment with the [Employer]*, including but not limited to any injury arising out of the work incident of March 3, 2005.

C. Whether the [C]laimant understands and agrees that subsequent to the approval of the [C & R], the [Employer] will not be liable for the payment of any medical bills incurred by the claimant after the approval date, regardless of whether said medical bills are reasonable, necessary and causally related to the acknowledged work injury.

D. Whether the [C]laimant understands and agrees that the [Employer] believes that it is entitled to a suspension of the [C]laimant's workers' compensation benefits as of March 10, 2006 and that the parties will allow the [WCJ] to decide the [Employer]'s entitlement to a suspension of benefits for the period running from March 10, 2006 until January 12, 2007. *In the event that the [WCJ] rules in favor of the [Employer] with regard to the suspension issue, [the Employer] agrees and acknowledges that it is not entitled to any reimbursement or other remuneration from the Claimant.*

. . . .

18. Miscellaneous provisions, if any.

. . . .

D. *The [C]laimant and the [Employer] have agreed that independent of this settlement, the [WCJ] will decide the issue of the [Employer]'s entitlement to a suspension of the [C]laimant's workers' compensation benefits for the period running from March 10, 2006 to January 12, 2007.*

(C & R ¶¶ 10, 15, 18(D) (emphases added).)

As of the time that Employer's counsel submitted the C & R to the WCJ, the WCJ had already conducted multiple hearings; heard live testimony from Claimant; heard testimony from several witnesses for Employer, received an IME report and the deposition of the IME physician; and received reports from four doctors who had treated Claimant.

On January 16, 2007, the WCJ issued an order approving the C & R and dismissing the Termination Petition as moot.[2] In the WCJ's decision accompanying the order, he recounted most of the above-quoted language, including the portion that stated that Employer's Suspension Petition was an open issue for determination by the WCJ. (WCJ Decision, Findings of Fact (FOF) ¶ 2, January 16, 2007.) In March 2007, the WCJ circulated a decision granting Employer's Suspension Petition as of April 11, 2006.

In April 2007, Employer filed its Reimbursement Application seeking reimbursement of $10,253 of benefits that it paid from April 11, 2006 through January 12, 2007. The Bureau filed an Answer to the Reimbursement Application (Bureau's Answer) denying that Employer was entitled to reimbursement. Therein, the Bureau alleged that the C & R specifically provided that Claimant and Employer had:

> "agreed to settle any and all claims arising out of the work incident of March 3, 2005." To the extent the parties continued to litigate the Suspension Petition, even after the matter was otherwise resolved by the C & R Agreement, the Commonwealth avers that the continued litigation was an improper attempt to pass part of the cost of their "agreed-to liability" onto [the] Supersedeas Fund.

See *Stroehmann Bakeries, Inc. v. WCAB (Plouse)*, 768 A.2d 1193, 1196 (Pa.Cmwlth.2001).

(Bureau's Answer.)

The WCJ conducted a hearing on the Reimbursement Application and subsequently issued an order on December 6, 2007, granting reimbursement in the amount of $10,122.98.[3] In the accompanying decision, the WCJ noted that several of the C & R provisions conflicted with each other. In particular, the WCJ noted that Paragraphs 15(D) and 18 provided that "the Suspension Petition was being held open" while Paragraphs 10 and 15(A)-(B) precluded all workers' compensation claims arising from the March 3, 2005 injury. (WCJ Decision Conclusion of Law (COL) ¶ 3, December 10, 2007.)[4] However, the WCJ concluded that the specific provisions which kept the Suspension Petition open governed the more general release provisions of Paragraphs 10 and 15(A)-(B):

> The Pennsylvania Supreme Court has held that when interpreting a contract, one must give effect to all the contracts' [sic] provisions and that a general provision must give way to a special one covering the same ground. In the case at bar, there was a general provision that the Compromise and Release re-

**2.** Pursuant to Section 449 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, added by the Act of June 24, 1996, P.L. 350, *as amended*, 77 P.S. § 1000.5, a proposed compromise and release may be submitted, through the filing of a petition, to a WCJ for approval. Section 449 further provides that the WCJ shall consider the petition and the proposed compromise and release in an open hearing and shall render a decision. "The [WCJ] shall not approve any compromise and release agreement unless he first determines that the claimant understands the full legal significance of the agreement." 77 P.S. § 1000.5. Once approved, a valid compromise and release agreement is final and binding on the parties. *Farner v. Workers'*

*Compensation Appeal Board (Rockwell International)*, 869 A.2d 1075, 1078 (Pa.Cmwlth. 2005).

**3.** The amount awarded was consistent with the amount that the Bureau's Claims Management Division calculated as being an appropriate supersedeas reimbursement. This amount was approximately $130 less than what Employer requested.

**4.** We note that the WCJ, in his Findings of Fact, slightly misquoted subparagraph C of Paragraph 15(c) of the C & R. This paragraph relates to the payment of medical bills and is not at issue in the current litigation.

solved all liability but a specific provision reserving the Suspension Petition in keeping it open for later decision. Under the principle of *Harrity v. Continental–Equitable Title and Trust Company,* [280 Pa. 237, 241–43, 124 A. 493, 494–95 (1924)] the specific provision governs and controls over the general provision and this Workers' Compensation Judge holds that it is proper to hold open the Suspension Petition under these circumstances for later decision.

(COL ¶ 4.) The Bureau appealed this decision to the Board. The Board affirmed. In doing so, the Board cited to our then-recent decision in *Department of Labor & Industry, Bureau of Workers' Compensation v. Workers' Compensation Appeal Board (U.S. Food Service),* 932 A.2d 309 (Pa.Cmwlth.2007), in support of its conclusion that "[w]hile the express terms of an Agreement can provide that a petition remain open, broad release language may evidence intent to settle all outstanding issues." (Board Op. at 5.) The Board examined the general release language in the C & R and determined that it was not "as broad [as] the type in *US Food* [ ], which released all past, present and future benefits in the face of a pending Termination Petition." (Board Op. at 5–7.)[5] The Bureau now petitions this Court for review.[6]

Section 443 of the Act governs reimbursement from the Supersedeas Fund and reads, in pertinent part, as follows:

(a) If, in any case in which a supersedeas has been requested and denied under the provisions of section 413 ... payments of compensation are made as a result thereof and upon the final outcome of the proceedings, it is determined that such compensation was not, in fact, payable, the insurer who has made such payments shall be reimbursed therefor....

(b) There is hereby established a special fund in the State Treasury ... to be known as the Workmen's Compensation Supersedeas Fund. The purpose of this fund shall be to provide moneys for payments pursuant to subsection (a).... The department shall be charged with the maintenance and conservation of this fund.

77 P.S. § 999. We have noted that:

By the plain language of Section 443(a) ... the following criteria are established by the Legislature for payments from the [Supersedeas] Fund:

1. A supersedeas must have been requested;

2. The request for supersedeas must have been denied;

3. The request must have been made in a proceeding under Section 413 of the Act [77 P.S. §§ 771–74];

4. Payments were continued because of the order denying the supersedeas; and

5. In the final outcome of the proceedings "it is determined that such compensation was not, in fact, payable."

*Bureau of Workers' Compensation v. Workmen's Compensation Appeal Board (Insurance Company of North America),* 101 Pa.Cmwlth. 552, 516 A.2d 1318, 1320 (1986)(footnote omitted). This language

**5.** We note that the Board's decision lacks a numbered page 6. For clarity, we have utilized the numbering of the Board.

**6.** This Court's scope of review of the Board's decision is "limited by Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, to determining whether constitutional rights have been violated, an error of law committed, or whether there is substantial evidence in the record to support the findings of fact." *Werner v. Workmen's Compensation Appeal Board (Bernardi Bros., Inc.),* 102 Pa.Cmwlth. 463, 518 A.2d 892, 894 (1986).

has been applied in two lines of cases relating to when issues may be considered after a WCJ has approved a compromise and release.

In the first line of cases, beginning with *Stroehmann Bakeries,* we addressed a compromise and release that contained broad release language, but that did not contain any language leaving any particular issues open for determination by a WCJ after approval of the compromise and release. In *Stroehmann Bakeries,* the claimant had been receiving workers' compensation benefits for a work-related injury, and the employer filed petitions to suspend and/or terminate benefits averring that, as of a particular date, the claimant had completely recovered from his work-related injury. The WCJ conducted hearings, which had fully concluded. Prior to the issuance of the WCJ's decision, the claimant and the employer executed a compromise and release. Under the terms of the compromise and release, the claimant received a lump-sum payment of $30,000 "in exchange for a release of [e]mployer's liability to pay wage loss and/or medical benefits arising out of the" work-related injury. *Id.* at 1194. The WCJ approved the compromise and release.

Subsequently, the employer asked the WCJ to issue his decision on the suspension and termination petitions. The WCJ declined, concluding that the compromise and release rendered the outstanding petitions moot. *Id.* at 1194–95. "[T]he Board affirmed, concluding ... that [e]mployer can not constructively attempt to amend the C & R by continuing this litigation." *Id.* at 1195. On appeal, this Court affirmed and concluded that the petitions were moot. In doing so, we rejected the employer's argument that no where in the compromise and release did it explicitly "surrender its right to pursue its termination petition." *Id.* at 1196. Rather, we found an intent to abandon such claims

from the following paragraph of the compromise and release:

15. State the issues involved in this claim:

Whether the Claimant's disability from 2–15–95 work-related injury has ceased.

*Stroehmann Bakeries,* 768 A.2d at 1196. We explained that:

We construe this statement in the C & R to mean that the parties intended to settle the question concerning Claimant's full recovery from his work-related injury, and in turn settle the same exact issue that was before the WCJ at the time the agreement was approved and was likewise the issue raised before the Board and now before this Court. To continue to litigate this selfsame issue after entering into the C & R was, at a minimum, disingenuous on Employer's part.

*Id.* We also discussed the motive of the employer:

We also note Employer's admission as to [its] motive for seeking the decision on the merits of the termination petition even after signing the C & R. Simply stated, with a favorable result, Employer indicated that it intends to apply for reimbursement from the supersedeas fund to recoup the payments made to Claimant for the period between January 7, 1997 (date termination petition filed) and August 7, 1998 (date agreed to by the parties in the C & R to end liability). This is essentially an attempt to place the cost for its agreed to liability on the shoulders of others.

*Id.* Thus, we found the petitions to be moot because the compromise and release contained language that we construed as broad enough to encompass all claims existing at the time the parties entered the compromise and release, there was no language in the compromise and release reserving issues for subsequent determina-

tion, and we would not allow the employer to modify the express language of the compromise and release. *Id.*; *accord U.S. Food Service*, 932 A.2d at 315 (finding termination petition to be moot because of broad compromise and release language covering " 'all ... past, present and future' benefits" and because the "express terms of the C & R do not provide that the Termination Petition remains open" (omission in original)).

In the second line of cases, *see, e.g., Coyne Textile v. Workers' Compensation Appeal Board (Voorhis)*, 840 A.2d 372 (Pa. Cmwlth.2003), we faced a situation distinguishable from *Stroehmann* in that the compromise and release at issue *expressly* left particular issues open for subsequent determination. In *Coyne*, the employer filed both a suspension and termination petitions. The claimant filed a reinstatement petition, a review petition, and a challenge petition to the suspension petition. While the case was proceeding, but before the WCJ had addressed the petitions, the parties entered into a compromise and release "agreeing to settle all future compensation." *Coyne*, 840 A.2d at 374. In recounting the procedural history, we noted that:

> the WCJ approved the parties' C & R concluding, in relevant part, that the C & R provided for the discontinuance and withdrawal of the Reinstatement Petition and Review Petition. The WCJ further concluded that, by the express terms of the C & R, the Termination and Challenge Petitions were to remain open to be subsequently adjudicated by the WCJ after approval of the C & R.

*Id.* Additionally, "[t]he WCJ noted that the sole reason for Coyne Textile's request that the Termination and Challenge Petitions be adjudicated after the compromise and release was approved was to potentially secure an alleged overpayment reimbursement from the Supersedeas Fund for benefits previously paid to Claimant." *Id.*

Based on our *Stroehmann Bakeries* decision, the WCJ dismissed the termination and challenge petitions as having been rendered moot by the compromise and release. The Board affirmed. On appeal, this Court reversed.

In concluding that the compromise and release did not render the termination and challenge petitions moot, we noted that the express terms of the compromise and release indicated that the settlement was for future liability, but that the issues left open were for a closed period and solely related to overpayment of benefits already paid. We distinguished *Stroehmann Bakeries*, noting that:

> Further, *Stroehmann's* motive-based holding is inapplicable to the instant facts, as the C & R at issue in the case before us expressly contemplated future adjudication of supersedeas reimbursement, and Employer's attempts to pursue that adjudication cannot be seen as an attempt to amend the C & R unilaterally after the C & R's execution and approval.

*Id.* at 376.

In the present case, the Bureau argues that the release language of this case is analogous to the release language in *Stroehmann Bakeries* and *US Food Service*. The Bureau notes that, in *US Food Service*, this Court concluded that broad release language mooted a subsequent effort to have a particular issue left open for future determination following the approval of the compromise and release. The Bureau also notes that the Board and WCJ decisions below are not consistent with *Stroehmann Bakeries*, in which this Court discussed the inappropriateness of shifting the cost of the employer's voluntary agreement onto the Supersedeas Fund by leaving particular issues open, after entry of the compromise and release, for subsequent determination.

In response, Employer argues that "[w]hile the [Employer] agreed to settle future liability with the [C]laimant through the C & R Agreement, the [Employer] never gave up its right to *try to obtain reimbursement* for the compensation it previously had to pay to the [C]laimant by virtue of the denial of its request for supersedeas." (Employer's Br. at 14.) Employer notes that, in *US Food Service*, this Court described the Supersedeas Fund as "inject[ing] fairness into a system that requires an employer to pay disputed benefits while they are appealed." (Employer's Br. at 14 (quoting *US Food Service*, 932 A.2d at 312).) Accordingly, Employer contends that this case does not present the "shell" litigation discussed in *Stroehmann Bakeries*. Rather, Employer contends this case is on point with our decision in *Coyne*.

We agree with Employer that the case before us is more analogous to the *Coyne* line of cases than to the *Stroehmann Bakeries* line of cases. Reading the provisions of the C & R together, it is clear that the lump-sum payment was intended to resolve all future liability issues, but that the parties intended to keep open the issue of existing liability for a closed period of time. Per *Coyne*, we conclude that the Suspension Petition was not rendered moot by the C & R. Our discussion in *US Food Service* supports this holding.

In *US Food Service*, we discussed the *Stroehmann Bakeries* and *Coyne* lines of cases and noted the key differences between the two. We noted that, in *Stroehmann Bakeries*, and in the *U.S. Food Service* case itself, the parties agreed to resolve the cases by means of compromise and releases, the terms of which provided a general release of liability in exchange for a lump-sum payment. In both cases, the respective compromise and releases lacked language holding any issues open.

We contrasted these cases with *Coyne*, holding that:

A different case arises, however, where the C & R expressly contains a provision that a particular petition or issue shall remain open after the C & R is executed and approved. In *Bethlehem Structural Products v. Workers' Compensation Appeal Board (Vernon)*, 789 A.2d 767 (Pa. Cmwlth.2001), and *Coyne* the C & R agreements did not release all liability. In *Bethlehem*, the C & R contained an express provision that the employer would not withdraw the appeal regarding the correct calculation of the average weekly wage. *Id.* at 770. Further, the lump sum payment resolved only future liability. *Id.* Similarly, in *Coyne*, by the express terms of the C & R, the termination and challenge petitions were to remain open and be adjudicated, and the reinstatement and review petitions were to be discontinued and withdrawn. *Id.* at 374. We, therefore, found that the C & R did not render the issues in the termination petition moot and, thereby, reversed and remanded.

*US Food Service*, 932 A.2d at 314–15. Thus, we noted that, in *Coyne*, we allowed a compromise and release that provided lump-sum payments for future liability, but that left open for subsequent resolution, by the express terms of the compromise and release itself, issues of existing liability.

As in *Coyne*, we find that the present situation is not one involving an inappropriate shifting of costs that occurs when issues are left open for the purpose of trying to get the Supersedeas Fund to pay for a settlement. The lump-sum in the C & R covered future, as of yet unpaid benefits. Employer is not seeking reimbursement for that lump-sum. Rather, Employer is only seeking payment for a closed period of time—for the workers' compensation benefits that Employer had paid

during the pendency of the action following the denial of its supersedeas request. Following that denial, Employer proceeded with its petitions, secured medical evidence, and was ultimately successful. The parties resolved the issues without lengthy appeal and drawn-out hearings, which is precisely what the Act, through its compromise and release provisions, seeks to encourage. For these reasons, we conclude that the C & R did not render Employer's Reimbursement Application moot.

Moreover, we find no error in the Board granting the Reimbursement Application. Each of the five elements for obtaining reimbursement from the Supersedeas Fund were satisfied: 1) Employer requested supersedeas; 2) that request was denied; 3) the request was made pursuant to a proceeding under Section 413; 4) Employer continued making payments for the limited time at issue because of the supersedeas denial; and 5) the WCJ's decision of March 26, 2007 determined that the benefits the Employer paid during the limited period at issue were not, in fact, owed. *See Insurance Company of North America,* 516 A.2d at 1320. We note that, in this proceeding, the WCJ considered: 1) testimony from Claimant and her four doctors; 2) an IME report and the deposition of the IME doctor; and 3) surveillance video and reports. The WCJ made extensive findings of fact, covering eighteen pages, in which the WCJ carefully and fully set forth the evidence he received. Among his findings, the WCJ determined that Claimant was not credible, noting that she testified in a "fairly melodramatic, exaggerative manner." (WCJ Decision, FOF 16(b), March 26, 2007.) We note that similar findings were echoed in the IME and even in Claimant's own doctors' reports.

For these reasons, we affirm the order of the Board.

## *ORDER*

**NOW,** May 6, 2009, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby **AFFIRMED.**