# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph DePiano,                          :
             Petitioner              :
                                      :
          v.                           :   No. 1184 C.D. 2018
                                      :   SUBMITTED:  February 15, 2019
Workers' Compensation Appeal             :
Board (Gregor),                          :
             Respondent              :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                      FILED:  May 24, 2019

Joseph DePiano (Employer) petitions for review of a July 31, 2018 order of the Workers' Compensation Appeal Board (Board), which affirmed the order of a Workers' Compensation Judge (WCJ) granting the claim petition of Kevin Gregor (Claimant) and the joinder petition filed by the Uninsured Employers Guaranty Fund (UEGF).[1]  Employer argues Claimant was barred from seeking benefits under the Act following the execution of a compromise and release agreement (C&R)[2] and the

---

[1] Section 1602 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of November 9, 2006, P.L. 1362, 77 P.S. § 2702 establishes the UEGF as a special fund to be used for the purpose of paying a claimant workers' compensation benefits where the employer otherwise liable for those benefits has failed to obtain insurance for workers' compensation liability.

[2] Section 449(a) of the Act, added by the Act of June 24, 1996, P.L. 350, 77 P.S. § 1000.5(a), allows the parties interested to compromise and release any and all liability which is claimed to exist under the Act on account of injury or death.  Section 449(b) requires a WCJ to consider the proposed agreement in an open hearing.  77 P.S. § 1000.5(b).  A C&R may not be approved unless the WCJ first determines the claimant understands its full legal significance.  *Id.*

WCJ's determination that Claimant lost his thumb as the result of a work injury was based on inadmissible hearsay evidence. We affirm.

## I. Factual and Procedural Background

Claimant sustained an injury to his left thumb on November 1, 2013, while working for Employer at a construction site. Notes of Testimony (N.T.), 8/23/16, at 16. Claimant's injury resulted in the loss of the first joint of his left thumb. *Id.* at 21. Employer did not carry workers' compensation insurance. N.T., 9/16/16, Employer's Deposition, at 19. Claimant filed a claim petition seeking payment from the UEGF for lost wages, medical expenses, counsel fees, and the loss of his left thumb. Certified Record (C.R.), Item No. 2. The UEGF filed an answer disputing Claimant's status as an employee of Employer and denying Claimant's allegations that he suffered a disabling injury. *Id.*, Item No. 4. The UEGF subsequently filed a petition to join Employer as an additional defendant. *Id.*, Item No. 5.

Claimant testified on his own behalf at a deposition held August 23, 2016. Employer did not appear at the deposition. Claimant testified that he performed carpentry work for Employer on November 1, 2013, the date of his work injury. N.T., 8/23/16, at 6. He worked in that capacity for approximately one year and was paid in cash, earning approximately $500-600 dollars per week. *Id.* at 6-7. During that time, Claimant also worked for Employer's moving company making an additional $200 per week. *Id.* at 8-9. On November 1, 2013, Claimant was cutting pieces of hard wood flooring with a table saw. *Id.* at 14. As Claimant turned to retrieve a piece of fallen wood, his hand caught on the saw, which was not equipped with a guard. *Id.* at 16-17. After notifying Employer of his injury, Claimant was driven to the hospital for treatment. *Id.* at 18-19. Claimant's thumb was sutured and bandaged, as reattachment of the missing joint was not possible. *Id.* at 20-21.

2

Claimant submitted into evidence several photos of his left hand which showed that the first joint is missing from his left thumb. *Id.* at 22.

Claimant returned to work the next day but could only work with his right hand. *Id.* at 24. Claimant's employment was terminated approximately two weeks later, allegedly because Claimant obtained legal counsel after Employer refused to pay medical expenses related to the November 1, 2013 work injury. *Id.* at 27.

Employer testified by deposition on September 16, 2016. At that time, Employer was not represented by counsel. N.T., 9/16/16, Employer's Deposition at 11. Employer declined an offer to end the deposition so that he might obtain counsel.[3] *Id.* at 12. Employer testified he had no employment contract with Claimant and maintained his position that Claimant was an independent contractor. *Id.* at 9, 16. Employer testified that all equipment and tools used on November 1, 2013 belonged to Claimant and Pat Hartnett, another individual who performed work for Employer. *Id.* at 19. Employer acknowledged he did not have workers' compensation insurance. *Id.*

Mr. Hartnett also testified by deposition on September 16, 2016. Mr. Hartnett stated he was self-employed and responsible for paying his own taxes. N.T., 9/16/16, Hartnett Deposition at 6. When performing work for Employer, Mr. Hartnett used his own tools and equipment, but he also used those supplied by Employer. *Id.* at 7. Mr. Hartnett was not present in the room when Claimant sustained his injury, however, he heard Claimant scream after the fact. *Id.* at 22. After checking on Claimant's welfare, Mr. Hartnett picked up Claimant's thumb, wrapped his hand, and drove Claimant to the hospital. *Id.*

---

[3] At an earlier proceeding, an April 21, 2016 pre-trial conference, the WCJ recommended Employer get advice from counsel before proceeding. N.T., 4/21/16, at 10.

After the depositions were complete, Claimant and UEGF negotiated and finalized a C&R, the terms of which were set forth in a standard form generated by the Department of Labor and Industry (Department). Reproduced Record (R.R.) at 5a-10a. The Department's form is largely fill-in-the-blank, however, Paragraph 19 provides space for the parties to include "**additional terms and provisions**, if any." *Id.* at 7a (emphasis in original). The parties' additional terms and provisions were attached to the standard form in a two-page addendum. *Id.* at 9a-10a. Generally, the parties agreed that "[i]n full satisfaction of all past, present, and future claims related to the alleged injury, Claimant, Claimant's counsel, UEGF, and UEGF's counsel hereby agree to the terms of this [C&R]." *Id.* at 6a. Paragraphs 4 and 19(d)-(e) of the C&R provided that the agreement resolved any potential claims Claimant had "in regard to the [UEGF] only" for injuries Claimant sustained during the course of his employment with Employer, and UEGF retained any rights of recovery it might have against Employer. *Id.* R.R. at 5a, 9a. UEGF agreed to pay Claimant $17,000 to resolve his specific loss[4] with no additional payment made for wage loss or medical benefits. *Id.* at 6a. UEGF explicitly reserved its right to subrogation from any party. *Id.* Paragraph 16 of the C&R provided that UEGF and Claimant entered into the agreement to "amicably resolve this matter without the expense, delay, and uncertainty of continued litigation." *Id.* at 7a. UEGF agreed to pay Claimant $17,000 "[i]n order to bring this matter to a close and avoid generating any additional unnecessary legal fees and costs." *Id.*

Paragraph 19(g) provided that the outstanding claim and joinder petitions would remain open to determine whether Employer was Claimant's employer on the

---

[4] A specific loss is either the loss of a body part by amputation or the permanent loss of the use of an injured part for all practical intents and purposes. *Jacobi v. Workers' Comp. Appeal Bd.*, 942 A.2d 263, 264 n.1 (Pa. Cmwlth. 2008).

date of his injury and to determine "the extent of [Employer's] liability to Claimant in this matter." *Id.* at 9a. Regardless of the future outcome of those petitions, the parties agreed Claimant was not entitled to any funds from UEGF beyond the amounts set forth in the C&R. *Id.* at 9a-10a. In the event of an award, the C&R provided that Employer might be entitled to a credit for payments made by UEGF to Claimant. *Id.* at 10a.

Page 4 of the Department's form contains preprinted language in which Claimant certified the following:

1. I certify that I have read this entire agreement, or to the best of my knowledge, information and belief (if applicable) this agreement has been read to me, and I understand all the contents of this agreement as well as the full legal significance and consequences of entering into this agreement.

2. I understand that, if this agreement is approved, **I will receive only the benefits mentioned in this agreement, unless the agreement provides specifically for additional amounts. I understand that my employer, its insurance company or its administrator will never have to pay any other workers' compensation benefits for the injury.**

3. Except for the amounts of benefits listed in this agreement, I have been offered nothing of value to convince me to sign this agreement.

4. I have been represented by an attorney of my own choosing during this case. My attorney has explained to me the content of this agreement and its effects upon by [sic] rights. _____ (Employee's Initials)

-OR-

I have <u>not</u> been represented by an attorney of my own choosing. However, I have been told that I have the right to be represented by an attorney of my own

5

> choosing in this proceeding. I have made my own decision not to have an attorney represent me. _____ (Employee's Inititals)
>
> 5. Unless specifically stated in this agreement, I understand that this agreement is a compromise and release of a workers' compensation claim, and is not considered an admission of liability by employer and/or insurer and/or administrator and/or fund.

*Id.* at 8a.

Claimant initialed the first part of paragraph 4, indicating he was represented by an attorney of his own choosing who explained the content of the agreement, and its effect on his rights. The parties agreed that "**all petitions are resolved unless specifically agreed to herein**." *Id.* (emphasis in original). The C&R required that a list of open issues or petitions be provided in the agreement. *Id.* The C&R was signed by Claimant, his counsel, and counsel for UEGF. *Id.* Neither Employer nor his counsel signed the C&R.

Pursuant to Section 449(b) of the Act,[5] the C&R was considered by the WCJ at a hearing on December 13, 2016, at which the WCJ was to determine whether Claimant understood the C&R's legal significance. The depositions of Claimant, Employer, and Mr. Hartnett, as well as Claimant's medical records and bills, were submitted into evidence at that hearing. Employer did not appear. The WCJ noted that the C&R was a "partial agreement, obviously, because you want to proceed on the claim." *Id.* at 8a. Claimant testified he understood the legal significance of the C&R. *Id.* at 9a-12a. As to Employer's future liability, the following exchange took place:

> [Counsel for UEGF]. You're aware that if the Judge would approve this agreement, my client will pay you the amount specified in paragraph ten of this agreement, but my client

---

[5] 77 P.S. § 1000.5(b).

won't be paying any of your medical bills; you're aware of that?

[Claimant]. Yes.

[Counsel for UEGF]. And you may have heard that we're leaving the case against [Employer] open. It's possible that [Employer] might be liable for your medical bills. Do you understand that?

[Claimant]. Yes.

*Id.* at 12a. The WCJ approved the C&R based on Claimant's expressed understanding of its terms. *Id.* at 13a.

**A. WCJ Decisions**

The WCJ issued a written decision on December 14, 2016, which incorporated the facts contained in the C&R. R.R. at 3a. Employer was "released from liability for Claimant's work-related injury **to the extent set forth in the [C&R]."** *Id.* at 4a.

On May 4, 2017, the WCJ issued a second decision disposing of Claimant's claim petition and UEGF's joinder petition. The WCJ found that Claimant's petition against UEGF was resolved by the C&R but Claimant retained claims against Employer for the loss of his left thumb and medical expenses. WCJ Decision, 5/4/17, Findings of Fact (F.F.) No. 3-4. Employer failed to demonstrate Claimant was an independent contractor. F.F. No. 12. Rather, Claimant performed work at the direction of Employer, who established the duties to be performed as well as the time and location of performance. F.F. No. 6, 10. Claimant presented credible and convincing testimony that he suffered an amputation of his thumb while working for Employer on November 1, 2013. *Id.* The WCJ found this testimony was supported by Claimant's medical records. F.F. No. 10. While claims by Claimant against UEGF were settled by the C&R, UEGF was entitled to a lien against Employer for

7

any settlement payments made by UEGF to Claimant. F.F. No. 15. Accordingly, the WCJ granted Claimant's claim petition against Employer for the loss of his left thumb and medical expenses and granted UEGF's joinder petition. WCJ Decision, 5/4/17, at 7. Employer was directed to pay Claimant 110 weeks of wage loss benefits for the loss of use of his left thumb, plus interest, as well as litigation and medical expenses. *Id.*

## B. Board's Decision

Employer filed an appeal with the Board, arguing the WCJ erred in granting Claimant's claim petition against Employer because the entire dispute was resolved by the C&R executed between Claimant and UEGF. The Board disagreed and affirmed the WCJ on the basis that the C&R only resolved Claimant's claim against UEGF. Board's Decision at 5, 8. The C&R had no bearing on Employer's liability as he was not bound by its terms, and Claimant retained his right to seek benefits from Employer. *Id.* at 5-6.

This appeal followed.[6]

## II. Issues

### A. Arguments on Appeal

On appeal, Employer argues that any claims related to Claimant's November 1, 2013 work injury were resolved by the C&R. Employer also contends the C&R constitutes a final decision under the doctrine of collateral estoppel and Claimant's claims may not be relitigated. Finally, Employer argues that the WCJ's finding that

---

[6] Our review of the Board's order is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *Walter v. Workers' Comp. Appeal Bd. (Evangelical Cmty. Hosp.)*, 128 A.3d 367, 371 n.5 (Pa. Cmwlth. 2015).

8

Claimant suffered an amputation of his left thumb was based on hearsay evidence alone and thus not supported by substantial evidence.

**B. Discussion**

First, we address Employer's argument that the C&R resolved all claims related to Claimant's November 1, 2013 work injury and that Claimant agreed he would receive no other workers' compensation benefits related to that injury. In furtherance of his argument, Employer relies on the C&R's boilerplate certification language which established Claimant's understanding and agreement that he would "receive only the benefits mentioned in this agreement, unless the agreement provides specifically for additional amounts." R.R. at 8a. Employer notes that Claimant further certified he understood that Employer would "never have to pay any other workers' compensation benefits for the injury." *Id.*

Claimant responds that the C&R only binds the parties to that agreement, namely Claimant and UEGF, and Paragraph 19 of the C&R provides that his claim is resolved with respect to UEGF only, and the claim and joinder petitions remain open for determination of Employer's liability to Claimant. In a brief filed in its capacity as Intervenor, UEGF likewise asserts that the WCJ properly determined the C&R only resolved those issues relating to UEGF's liability to Claimant, as Employer was not a party to the C&R.

A valid C&R agreement is binding upon the parties. *Armour Pharmacy v. Bureau of Workers' Comp. Fee Review Hearing Office (Nat'l Fire Ins. Co. of Hartford)*, 192 A.3d 304, 311 (Pa. Cmwlth. 2018). The scope of Section 449(a) is limited to the "parties interested" who wish to compromise and release their liability under the Act. *Id.* A C&R may address any liability, but not necessarily all liability which is claimed to exist under the Act. *Gingerich v. Workers' Comp. Appeal Bd.*

9

*(U.S. Filter)*, 825 A.2d 788, 791 (Pa. Cmwlth. 2003). If some liability is not compromised and released in the C&R, that particular liability still exists. *Id.* A C&R only extinguishes liability where the person with the claim specifically agrees to relieve the liable person from that liability. *Id.* It is undisputed that Employer was not a party to the C&R. Consequently, Employer is only relieved of liability by the C&R if Claimant specifically agreed to do so.

Presently, the WCJ's December 14, 2016 order provided that Employer was released from liability for Claimant's November 1, 2013 work injury only "to the extent set forth in the [C&R]." R.R. at 4a. Paragraph 19 of the C&R specifically provided that the claim was resolved "with respect to [the] UEGF only," and the outstanding claim and joinder petitions would remain open for a determination of the extent of Employer's liability to Claimant. *Id.* at 9a. By signing the C&R, Claimant certified his understanding that he would only receive the benefits mentioned in the C&R, "unless the agreement provide[d] specifically for additional amounts." R.R. at 8a**.** Claimant further certified he understood that Employer would "never have to pay *any other* workers' compensation benefits for the injury." *Id.* (emphasis added).

We recognize that the special provisions added to the C&R by UEGF and Claimant are in apparent conflict with the certification language included in the Department's form. This Court has been called on to review similar matters where there are apparent ambiguities in a C&R regarding liability. In these decisions, this Court has analyzed whether language in the C&R leaves open an issue to be decided in a later proceeding before a WCJ.

In *Stroehmann Bakeries, Inc. v. Workers' Compensation Appeal Board (Plouse)*, 768 A.2d 1193 (Pa. Cmwlth. 2001), this Court addressed a C&R that

10

contained a broad release of liability which encompassed all claims existing at the time the parties entered into the agreement and which failed to reserve any issues for subsequent determination by a WCJ. Following approval of the C&R by a WCJ, the employer sought adjudication of its previously filed termination and suspension petitions. *Id.* at 1194. The WCJ dismissed the employer's petitions as moot per the terms of the C&R. *Id.* at 1195. The Board affirmed. *Id.* On appeal, this Court focused on the specific issue identified in the C&R – whether the claimant's work-related injury had ceased – and analyzed whether that same exact issue was raised in the suspension and termination petitions pending before the WCJ. *Id.* at 1196. The Court determined that both the C&R and the termination petition intended to settle the question of whether the claimant had fully recovered from his work-related issue. Accordingly, this Court held that the termination petition was rendered moot by the C&R and we affirmed the Board since the C&R "settle[d] the same exact issue" that was before the WCJ. *Id.*

Similarly, in *Department of Labor & Industry, Bureau of Workers' Compensation v. Workers' Compensation Appeal Board (U.S. Food Service)*, 932 A.2d 309, 315 (Pa. Cmwlth. 2007), this Court deemed an employer's termination petition moot because broad language in a C&R covered all past, present, and future benefits, and the express terms of the C&R did not provide that the outstanding termination petition would remain open.

These decisions may be contrasted with *Department of Labor & Industry, Bureau of Workers' Compensation v. Workers' Compensation Appeal Board (Ethan-Allen Eldridge Division)*, 972 A.2d 1268 (Pa. Cmwlth. 2009). In *Ethan-Allen*, the parties executed a C&R in which the claimant and the employer explicitly agreed to settle any workers' compensation claim the claimant had for any injury

she may have sustained during the course of her employment in exchange for a lump sum payment of $22,500. *Id.* at 1270. In signing the C&R, the claimant understood she would be forever precluded from bringing any such claims against her employer and her employer would not be liable for the payment of any further medical bills. *Id.* However, the parties added a provision to the C&R that, independent of the C&R, a WCJ would decide the issue of the employer's entitlement to a suspension of benefits. *Id.*

Subsequent to the WCJ's approval of the C&R, the employer sought reimbursement of benefits paid during a period in which it believed the claimant's benefits should have been suspended. *Id.* at 1271. In granting the employer's reimbursement application, the WCJ noted the inherent conflict in the terms of the C&R. *Id.* The WCJ concluded that the specific terms which kept the suspension petition open governed the more general release provisions which precluded all claims arising from the claimant's work injury. *Id.* The Board affirmed the WCJ. *Id.* at 1272.

This Court affirmed the Board on the basis that, reading the provisions of the C&R as a whole, it was clear that the lump sum payment was intended to resolve future liability issues, but the parties intended to keep open issues related to the employer's suspension petition. *Id.* at 1275. The employer's suspension petition was thus not rendered moot by the C&R. *Id. See also Coyne Textile v. Workers' Comp. Appeal Bd. (Voorhis)*, 840 A.2d 372, 377 (Pa. Cmwlth. 2003) (C&R which agreed to settle all future compensation did not moot issues expressly left open for subsequent determination); *Bethlehem Structural Prods. v. Workers' Comp. Appeal Bd. (Vernon)*, 789 A.2d 767, 770 (Pa. Cmwlth. 2001) (C&R did not settle issue raised in employer's review petition, which questioned a WCJ's calculation of the

12

claimant's average weekly wage, as the C&R indicated that issue was still in dispute).

In the instant matter, the C&R contains broad language which provided a general release of liability in exchange for a lump-sum payment from UEGF. However, Paragraph 19(d) of the C&R expressly stated that the claim was "resolved with respect to [the] UEGF only." R.R. at 9a. Paragraph 19(g) left open the claim and joinder petitions for determination of the extent of Employer's liability to Claimant and provided that, if an award of benefits was made, Employer would receive a credit for payments made by UEGF to Claimant pursuant to the C&R. *Id.* at 9a-10a. Faced with such facts, our decision here is governed by *Ethan-Allen.* When reading *all* provisions of the C&R together, and taking into account Claimant's testimony that he understood the claim and joinder petitions would remain open, it is clear the lump sum payment made to Claimant was intended to resolve only UEGF's liability and not Employer's. Employer's liability was to be determined in a subsequent adjudication which would dispose of the outstanding claim and joinder petitions.

Applying our analysis in *Stroehmann* – whether the C&R intended to resolve the same issues as those set forth in the outstanding petitions – leads us to the same conclusion. The C&R intended to settle the issue of UEGF's liability to Claimant. The claim and joinder petitions seek to resolve Employer's liability to Claimant. As the issues resolved by the C&R and those set forth in the outstanding claim and joinder petitions are not the same, the general release of liability in the C&R cannot render moot the outstanding petitions explicitly kept open by specific provisions added by the parties to the agreement. Consequently, we find no error on the part of

13

the Board for affirming the WCJ's adjudication of those petitions and the award of benefits to Claimant.

Next, Employer argues Claimant is prohibited by the doctrine of collateral estoppel from relitigating his claim. Employer generally recites the definition of collateral estoppel, but otherwise provides no authority to support his argument. He further fails to develop his argument beyond asserting that the C&R constituted a final decision which may not be relitigated. Arguments which are not appropriately developed are waived. *Philadelphia v. Berman,* 863 A.2d 156, 161 n.11 (Pa. Cmwlth. 2004). Based on Employer's failure to appropriately develop his collateral estoppel argument, we find this issue waived.

Finally, Employer argues the evidence is insufficient to support the WCJ's finding that Claimant suffered a permanent loss of his thumb. Employer maintains that a finding of specific loss must be supported by competent medical evidence. The medical evidence relied upon by the WCJ was uncorroborated hearsay and thus, Employer argues, inadmissible.

Claimant responds that Employer's hearsay argument is waived as he failed to object to the admission of Claimant's medical records. Further, Claimant's testimony, as well as the photographic evidence introduced at his deposition, establishes that Claimant's left thumb was amputated, and Claimant's injury was of a type that did not require expert testimony.

It is well-settled that a claimant bears the burden of demonstrating a right to compensation and establishing all the elements necessary to support an award. *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy),* 634 A.2d 592, 595 (Pa. 1993). A claimant cannot rely solely on his own testimony and must present medical evidence to support a specific loss claim. *Miller v. Workers' Comp. Appeal Bd. (Wal-Mart)*,

14

44 A.3d 726, 729 (Pa. Cmwlth. 2012). Hearsay evidence, admitted without objection, will be given its natural probative effect and may support a finding of the WCJ if corroborated by any competent evidence in the record. *Furnari v. Workers' Comp. Appeal Bd. (Temple Inland)*, 90 A.3d 53, 73 (Pa. Cmwlth. 2014).

Presently, Claimant's medical records were admitted at the December 13, 2016 hearing before the WCJ. N.T., 12/13/16, Ex. C-05. These records, which indicate Claimant suffered an amputation of the first joint of his left thumb, constitute the only medical evidence presented by Claimant. *Id.* Employer did not appear at the December 13, 2016 hearing and lodged no objection to the medical records thereafter. Claimant has not challenged Employer's assertion that his medical records constitute hearsay. Therefore, we must review whether the disputed medical evidence establishing an amputation of Claimant's left thumb is corroborated by other competent evidence in the record.

Claimant testified his thumb was amputated as a result of the work injury. N.T., 8/23/16, at 20-21. This testimony is supported by photographic evidence which depicts Claimant pressing his left hand flat on a table. *Id.* at 22. The first joint of his left thumb is clearly missing. *Id.* Mr. Hartnett testified that, following Claimant's work injury, he picked Claimant's thumb off the floor before taking Claimant to the hospital for treatment. N.T., 9/16/16, Hartnett Deposition at 22. This evidence corroborates Claimant's medical records which state that Claimant suffered an amputation of the first joint of his left thumb. Consequently, we agree with Claimant that the WCJ's finding that Claimant suffered an amputation of his left thumb as a result of the November 1, 2013 work injury is supported by substantial evidence. Employer's argument to the contrary lacks merit.

For these reasons, we affirm the order of the Board.


_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph DePiano,                :
           Petitioner      :
                          :
     v.                   : No. 1184 C.D. 2018
                          :
Workers' Compensation Appeal  :
Board (Gregor),           :
           Respondent   :

**O R D E R**

AND NOW, this 24th day of May, 2019, the July 31, 2018 order of the Workers' Compensation Appeal Board is hereby affirmed.

ELLEN CEISLER, Judge